NATIONAL UNION FIRE INSURANCE COMPANY, Appellant, *v.* CAESARS PALACE HOTEL and CASINO, and NEVADA INSURANCE GUARANTY ASSOCIATION, Respondents.

No. 20263

May 30, 1990                                            792 P.2d 1129

*Barker, Gillock, Koning, Brown & Earley* and *David L. Thomas,* Las Vegas, for Appellant.

*Alverson, Taylor, Mortensen & Gould,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

This is an appeal from an order granting respondents' motion for partial summary judgment. For the reasons set forth below, we reverse.

### Facts

A heavyweight championship boxing match between Larry Holmes and Gerry Cooney took place on June 11, 1982, in a temporary arena set up in the parking lot of Respondent Caesars Palace Hotel and Casino (Caesars) in Las Vegas. Production of the fight was a joint effort of Caesars and the fight promoters, Don King Productions and Tiffany, Inc. (King/Tiffany). At the time of the fight, Caesars was insured under two policies: a general liability policy issued by Ambassador Insurance Company (Ambassador), and a special event policy issued by Appellant National Union Fire Insurance Company (National Union) which covered the production of the boxing match. Pursuant to its agreement with Caesars, King/Tiffany obtained the National Union policy and Caesars was listed as an additional named insured. The National Union policy states in pertinent part that:

> IT IS HEREBY UNDERSTOOD AND AGREED THAT CAESARS WORLD, INC. AND CAESARS PALACE, INC. THEIR OFFICERS, AGENTS AND EMPLOYEES ARE ADDED AS ADDITIONAL NAMED INSUREDS, BUT ONLY WITH RESPECT TO LIABILITY ARIS-

ING OUT OF OPERATIONS PERFORMED FOR SUCH INSURED, BY OR ON BEHALF OF THE NAMED INSURED.

Charles Arnoult attended the fight. At the conclusion of the fight, Arnoult exited the arena and followed the crowd which was being directed into Caesars Hotel-Casino. Arnoult and the crowd of fight patrons entered a corridor leading into the hotel. After Arnoult had travelled approximately 20 feet into the corridor, someone shouted "Watch out, he has a gun." Although apparently no shots were fired, the crowd panicked and Arnoult was seriously injured in the ensuing stampede.

Arnoult subsequently recovered a judgment in a personal injury action brought against Caesars. National Union had rejected Caesars' tender of the defense in that action, claiming that because the incident occurred inside Caesars Hotel-Casino, Arnoult's injuries fell outside the scope of coverage provided by the National Union policy. Consequently, Arnoult's judgment was satisfied by Caesars and Respondent Nevada Insurance Guaranty Association (NIGA) which had assumed certain of Ambassador's obligations after Ambassador was placed in liquidation in or about May 1984.

Respondents thereafter filed the instant action against National Union seeking indemnification for the cost of defending Arnoult's suit and for the payment of the resulting judgment. On January 10, 1989, respondents filed a motion for partial summary judgment and requested a finding that Arnoult's injuries were covered under the above-quoted "arising out of operations" language of the National Union policy. Respondents alternatively asserted that a "completed operations hazard" clause contained in the National Union policy covered Arnoult's claim.

National Union opposed respondents' motion and moved to compel Caesars to produce certain documents and to answer certain interrogatories in order to establish the scope of coverage intended by the parties. Following a hearing, the district court ruled that Caesars' intent was immaterial, and that because Arnoult was injured by the flow of fight patrons, his injuries were covered under the "arising out of operations" language of the National Union policy as a matter of law. The district court issued no ruling as to the scope of coverage provided by the "completed operations hazard" clause of the policy, nor did the court rule on National Union's motion to compel. This appeal followed.

## Discussion

When an ambiguity exists in an insurance policy, the court

should consider not merely the language, but also the intent of the parties, the subject matter of the policy, the circumstances surrounding its issuance, and the policy should be construed to effectuate the reasonable expectations of the insured. National Union Fire Ins. v. Reno's Exec. Air, 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984). As an additional named insured, Caesars' intent is relevant to the construction of the contract because the intent of King/Tiffany in requesting the added coverage is directly dependent on the agreement between King/Tiffany and Caesars. Note, *Recognizing the Unique Status of Additional Named Insureds,* 53 Fordham L. Rev. 117, 129 (1984) (citing, *e.g.,* Valentine v. Aetna Ins. Co., 564 F.2d 292, 296 (9th Cir. 1977); Consolidation Coal Co., Inc. v. Liberty Mutual Ins., 406 F.Supp. 1292, 1300 (W.D.Pa. 1976)). Here, the scope of coverage provided by virtue of the words "arising out of operations" is ambiguous. Thus, the district court erred in disregarding Caesars' intent and in not granting National Union's motion to compel discovery in order to ascertain that intent.

In addition, a potentially relevant circumstance surrounding issuance of the National Union policy is industry custom and usage in the area of special events insurance. Extrinsic evidence of such custom and usage may help establish what the parties intended the words "arising out of operations" to include. *See* Nat. Union Fire Ins. Co. v. Continental Ill. Corp., 658 F.Supp. 781, 789-90 (N.D.Ill. 1987). National Union should have been given a sufficient opportunity to conduct discovery in order to ascertain whether a sufficiently established custom existed at the time the contract was executed, whether Caesars or King/Tiffany had actual or constructive knowledge of such custom, and whether the parties acted in reference to such custom. *See* Valley Nat. Bk. v. Cotton Growers Hail Ins., 747 P.2d 1225, 1228 (Ariz.Ct.App. 1987).

Finally, we are not prepared to hold that the "completed operations hazard" clause of the National Union policy covered Arnoult's injuries as a matter of law.[1] As with the "arising out of

---

[1]The clause at issue provides in full that:

"completed operations hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

operations" language, the scope of coverage provided by this clause is uncertain and the clause should not be construed without the benefit of evidence regarding the parties' intent and relevant custom and usage.

For the foregoing reasons, we hold that the district court erred in granting respondents' motion for partial summary judgment and in not granting National Union's motion to compel discovery. Accordingly, we reverse the order granting partial summary judgment and remand this case to the district court for further proceedings consistent with this opinion.

---

(3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.