THE GRAND HOTEL GIFT SHOP, a Nevada General Partnership, LIBERTY JOSEPHS, IRMA GOLOB, RUTH FOND, and LIBERTY JOSEPHS as Trustee of the JENNIFER LYNN JOSEPHS TRUST, the DIANE ZOE JOSEPHS TRUST, and the ADELE FELICE JOSEPHS TRUST, Individually, dba THE GRAND HOTEL GIFT SHOP, Appellants/Cross-Respondents, v. GRANITE STATE INSURANCE COMPANY, Respondent/Cross-Appellant.

No. 21370

September 15, 1992                    839 P.2d 599

[Rehearing denied January 28, 1993]

*Brent A. Larsen,* Las Vegas, and *Anderson & Holland,* Salt Lake City, Utah, for Appellants/Cross-Respondents.

---

*Morse & Mowbray,* Las Vegas, and *Cummins & White* and *Irvin Halpern,* Los Angeles, California, for Respondent/Cross-Appellant.

*Daniel F. Polsenberg* and *Allan R. Earl,* Las Vegas, for Amicus Curiae Nevada Trial Lawyers Association.

# OPINION

*Per Curiam:*

This dispute arose from a fire at the MGM Grand Hotel in Las Vegas on November 21, 1980, which destroyed the inventory of stock and interrupted the business of the Grand Hotel Gift Shop (Gift Shop) until July 31, 1981, resulting in a loss of $999,051.00. On December 19, 1983, the Gift Shop filed a complaint against the Harley E. Harmon Insurance Agency, Inc. (Harmon), which had sold the Gift Shop an insurance policy, and against Granite State Insurance Company (Granite State), the underwriter. In June, 1988, the Gift Shop settled with Harmon and filed a dismissal with prejudice as to Harmon. The Gift Shop also settled with Granite State on the issue of the loss of its inventory stock. The bench trial, which began on April 3, 1989, centered around four issues concerning agency, incremental rent,

reformation of the contract, and statutory notice. In an amended judgment, filed on April 12, 1990, the court ruled that: (1) Harmon was not acting as the agent of Granite State regarding representations made to the Gift Shop, (2) Granite State's treatment of the incremental rent in determining the amount of business interruption coverage was correct, (3) the Gift Shop was not entitled to reformation of the contract, (4) Granite State violated NRS 687B.350 by failing to notify the Gift Shop that the renewal policy did not contain an ordinary payroll exclusion (OPE), and (5) due to that violation, Granite State was liable to the Gift Shop for $113,883.00, that portion of its business interruption loss attributable to the absence of the OPE from the policy.

The principal changes in the amended judgment were to eliminate the Gift Shop's award of costs and prejudgment interest on the principal amount of $113,883.00 and to award Granite State its taxable costs of $10,151.75 and attorneys' fees of $36,476.00. These changes were made because the Gift Shop's judgment recovery was less than an offer of judgment in the amount of $125,000.00 made by Granite State prior to trial.

On appeal, the Gift Shop raises issues as to agency, reformation, independent negligence, definitions and application of contract terms, and the offer of judgment. Granite State cross-appeals on the issue of statutory notice.

*Harmon's Agency Relationship*

The district court's findings of fact state in part that "the Harmons [Harley E. Harmon Insurance Agency, Inc., Harley Harmon, and Jeff Harmon] were acting as the agent of the Gift Shop, and not as the agent of Granite State." As a result of this finding the district court excluded evidence of negligent supervision by Granite State and denied reformation of the contract. The Gift Shop argues that the district court erred as a matter of law and that Harmon was instead an agent of Granite State. The Gift Shop contends that Harmon was an agent of Granite State for two reasons: (1) Granite State appointed Harmon as its agent by filing a notice of appointment in compliance with NRS 683A.280,[1] and (2) Harmon was not only authorized to countersign policies in Nevada, it actually countersigned this policy.[2]

---

[1]NRS 683A.280(1) provides, in pertinent part:

> Each insurer appointing an agent, resident or nonresident, in this state shall file with the [insurance] commissioner a written appointment specifying the kinds of insurance to be transacted by the agent for the insurer.

[2]The policy states that it must be countersigned by an "authorized representative of the Company."

The question of the interpretation of a contract when facts are not disputed is a question of law. Nationwide Mutual v. Moya, 108 Nev. 578, 837 P.2d 426 (1992). Therefore, we review the court's findings de novo as a question of law. *See* Board of Regents v. Phoenix Newspapers, 806 P.2d 348, 351 (Ariz. 1991).

The Gift Shop contends that Nevada's insurance licensing statutes—NRS 680A.300, 683A.030, 683A.040, and 683A.280 —create a principal-agent relationship between Granite State and Harmon, and that the district court should have admitted evidence to prove Granite State's negligent supervision of its "agent," Harmon. The insurance licensing statutes require out-of-state insurers to appoint resident agents or brokers in Nevada to transact business. However, these statutes are limited in scope and do not govern the general law of agency. As stated in 16 John Alan Appleman & Jean Appleman, Insurance Law and Practice with Forms § 8671, at 182-83 (1981 & Supp. 1991):

> Statutes requiring the registering or licensing of insurance agents have no effect on their powers to bind their principals, and do not change the general laws of agency. Neither the license granted to an insurance agent nor the statute under which it is issued define the authority of an insurance agent.

An agency relationship is formed when one who hires another retains a contractual right to control the other's manner of performance. Sharp v. W.H. Moore, Inc., 796 P.2d 506 (Idaho 1990). In 1979, Granite State, which is located in New Hampshire, appointed Harmon as its "resident agent" pursuant to the licensing statutes, and Harmon countersigned the Gift Shop's 1979 policy as required by NRS 680A.300. The two parties had a simple contractual relationship to split commissions, but they had no agreement, express or implied, that Granite State controlled Harmon nor any agreement beyond compliance with licensing requirements to show that Harmon had authority to act on behalf of Granite State. Because Granite State and Harmon had no agreement or other manifestation of consent from which to find a principal-agent relationship, their compliance with Nevada's insurance licensing statutes alone is an insufficient reason to establish a principal-agent relationship between the parties. *See* Pete's Satire, Inc. v. Commercial Union Ins., 698 P.2d 1388 (Colo.Ct.App. 1985) (statute providing that insurance agents are agents of insurer and brokers are the representatives of insured does not govern or allocate liabilities for wrongs as among principal, agent, and third party), *aff'd,* 739 P.2d 239 (Colo. 1987). Also, when acting on its own initiative, without being

subject to Granite State's direction as to how to negotiate and execute the contract, Harmon was not acting as an employee of Granite State. *See* Anderson v. Farm Bur. Mut. Ins. Co. of Idaho, 732 P.2d 699 (Idaho Ct.App. 1977) (insurance agent whose function is solely to bring about contractual relations between his principals and others on his own initiative is not an employee of the insurer). Thus, we conclude that the Nevada statutes which regulate insurance do not create a principal-agent relationship between Harmon and Granite State.

Although the determination of whether an insurance agent was an agent of the insured or of the insurer should include consideration of the relevant statutory provisions, *see* Vina v. Jefferson Ins. Co. of New York, 761 P.2d 581, 584-85 (Utah Ct.App. 1988), other factors also merit consideration. In European Bakers, Ltd. v. Holman, 338 S.E.2d 702 (Ga.Ct.App. 1985), the Georgia Court of Appeals evaluated the following factors in deciding a factually similar case: (1) the insured's reliance on the agent's judgment and discretion in procuring insurance coverage, (2) the general rule that an independent insurance agent is considered the agent of the insured, not the insurer, (3) in dealing with an insured, whether the agent selected which insurance company to use, (4) whether the agent reviewed the insured's financial records and made recommendations regarding coverage, (5) whether the agent knew that the insured was relying on him to explain the insurance policies he procured, and (6) the general rule that even if the agent acts in a "dual agency" capacity, he is still the agent for the insured, not the insurer. *Id.* at 704.

In the instant case, the Gift Shop had been using Harmon for its insurance needs since the 1960s. Harmon, which was licensed in Nevada as a broker as well as an agent, had advised the Gift Shop regarding its insurance coverage requirements for the entire period since its opening. The agency had appointments as a resident agent by five insurance companies. Of the total insurance premiums collected on policies written through Harmon in 1979, approximately 25% was based on policies issued by Granite State. In obtaining policies from Granite State, Harmon dealt with a company known as Western General Agency, which was the managing general agent for Granite State. Granite State issued policies only through such intermediaries rather than with the public. Either Harmon or Granite State could revoke Harmon's agency appointment, and Granite State did not restrict whom Harmon could solicit as a potential insured. Moreover, Granite State did not require Harmon to submit potential clients to it

exclusively, nor did it require Harmon to produce any specific amount of premiums for Granite State in order to keep the agency appointment. After Harmon collected its premium from the insured, it deducted its commission, which was its only compensation, from the premium and forwarded the remaining portion to Granite State. Also, it was Harmon, not Granite State, that made the decision to renew the Gift Shop's policy with Granite State. Thus, because the facts of the instant case are similar to those of *European Bakers*, where the independent insurance agent was held to be the agent of the plaintiff-insured, and because of our application of the *European Bakers* factors to the facts of the case at bar, we conclude that Harmon was an agent of the Gift Shop rather than an agent of Granite State.

Therefore, we hereby affirm the district court's decisions to exclude evidence of negligent supervision and to deny reformation of the contract on the basis of a mutual mistake between the Gift Shop and Harmon, because those theories of recovery first necessitated a finding that Harmon was an agent of Granite State.

*Granite State's Independent Negligence*

The Gift Shop next argues that the district court should have admitted evidence of Granite State's independent negligence in writing the Gift Shop's business interruption coverage. The Gift Shop contends that the evidence would have established that Granite State was negligent in writing the policy, which showed a figure for annual gross sales that was substantially less than the amount of business interruption coverage. Another alleged discrepancy was that Granite State's audit before the fire showed annual sales of more than fifteen times the amount covered in the policy. The Gift Shop contends that these inconsistent figures should have alerted Granite State's underwriting department that it needed to re-examine the policy, and that the failure to do so constituted independent negligence. Granite State filed a motion in limine to preclude the Gift Shop from introducing evidence of Granite State's alleged independent negligence, and the district court granted that motion to the extent of excluding an expert witness.

In Hay v. Hay, 100 Nev. 196, 198, 678 P.2d 672, 674 (1984), this court stated that "[b]ecause Nevada is a notice-pleading jurisdiction, our courts liberally construe pleadings to place into issue matters which are fairly noticed to the adverse party." The Gift Shop observes that the first amended complaint in the first cause of action states that the Gift Shop "purchased the services

and insurance of Granite State," and that Granite State's answer raises contributory negligence as the sixth affirmative defense. Also, the Gift Shop argues that Granite State was included in the allegation of negligence because it is a named defendant. However, because of the indefiniteness of the pleadings and the absence of a specific allegation of independent negligence, we do not agree with the Gift Shop's contentions. Nevada's construction of pleadings, however, liberal it may be, only extends to matters which are fairly noticed to the adverse party. We conclude that the pleadings, due to their vagueness, gave Granite State insufficient notice of the Gift Shop's claim of independent negligence, and that the district court committed no error in excluding evidence of Granite State's alleged negligence in writing the policy.

### Net Sales and Incremental Rent

The district court held that incremental rent[3] should not be deducted from the gross earnings to arrive at the "net sales," and the Gift Shop contends that this was error because the district court erroneously defined net sales. The gross earnings section in the policy defined gross earnings as "net sales" and other earnings minus the cost of raw stock, supplies, merchandise sold, and outside services. The policy also provided that "no other costs shall be deducted in determining gross earnings," but, the policy did not define the term "net sales." The Gift Shop argues that the proper standard to apply in the construction of an insurance contract is how a person untrained in insurance would construe a policy in light of its plain meaning, and that incremental rent should be deducted from gross earnings in calculating net sales.

The dispute with respect to net sales and incremental rent requires a brief explanation of the insurance contract. The policy's "Contribution Clause" (sometimes referred to as a "co-insurance clause") sets forth the formula for ascertaining what portion of the business interruption loss is recoverable under the policy. The first calculation is the gross earnings that the insured would have earned under the policy had there been no loss during the twelve-month period beginning with the date of the loss. This figure, compared with the amount of insurance necessary, shows whether the insured has met the policy requirements. In the instant case, the policy required that the business

---

[3]The district court explained "incremental rent" as follows:

> The lease between the Gift Shop and the MGM Grand Hotel provided that the rent payable by the Gift Shop would be based on a percentage of the Gift Shop's sales, with a guaranteed minimum annual rental. The amount of the rent based on the specified percentage of the Gift Shop's sales, which exceeded the guaranteed minimum annual rental, is referred to as "the Incremental Rent."

loss be 80% of the gross earnings to allow for recovery of 100% of the insured's loss. The amount of insurance purchased determines the potential recovery and the percentage of the loss that can be recovered. If the Gift Shop's incremental rent were deducted as an ordinary expense, the figure for gross earnings would be less, and this would translate into a greater percentage of recovery for the Gift Shop under the co-insurance clause.

Where a term in an insurance contract is unclear and ambiguous, all doubts are resolved in favor of the insured. Insurance Corp., of America v. Rubin, 107 Nev. 610, 616, 818 P.2d 389, 392 (1991); Keener v. C.S.A.A., 107 Nev. 504, 506, 814 P.2d 87, 88 (1991). The term "net sales" is susceptible to more than one interpretation because reasonable minds may disagree as to what items should be deducted from the gross earnings to determine the net sales. Moreover, the Gift Shop introduced evidence that another insurance company allowed a deduction of incremental rent from gross earnings to determine net sales. We agree with the Gift Shop that net sales is an elastic term, and it should be construed in accordance with the understanding of a person unfamiliar with insurance policies. Based on the foregoing reasons, we conclude that the district court incorrectly defined "net sales," and that incremental rent should be deducted from gross earnings to arrive at net sales. Therefore, we reverse and remand for a determination of the exact amount of the increase in damages to be awarded to the Gift Shop.

*Notice Pursuant to NRS 687B.350*

In an amended judgment, the district court awarded $113,883.00 to the Gift Shop because Granite State failed to give statutory notice to the Gift Shop. The district court found that Granite State had violated NRS 687B.350[4] by failing to notify the Gift Shop that the policy was being renewed without the ordinary payroll exclusion (OPE) coverage that the prior policy had included. Granite State argues that this interpretation was erroneous because NRS 687B.350 only applies where the insurer "offers or purports to renew" a policy, and Granite State made no such unilateral effort to renew the policy on different terms.

---

[4]NRS 687B.350 provides:

> If the insurer offers or purports to renew the policy but on different terms, including different rates, the policyholder shall, for 30 days after he receives notice calling his attention to the changes in the policy, have the option of canceling it. If he elects to cancel, the insurer shall refund to him the excess of the premium paid by him above the pro rata premium for the expired portion of the new term.

The effect of the inclusion of an OPE in a policy is to eliminate coverage under the business interruption portion of the policy for the costs incurred by a business to keep non-managerial employees on the payroll during a business interruption period. In this case, had Granite State included an OPE in the renewed policy, the Gift Shop would have recovered an additional $113,883.00, which is the amount the district court awarded to the Gift Shop as damages for Granite State's failure to give proper notice under NRS 687B.350.

The OPE was one of the features in the Gift Shop's prior policy with Granite State, and the parties purposely bargained for a renewal on the "same basis" as the prior policy. NRS 687B.350 requires the insurer to notify a policyholder if a policy is renewed with altered terms. The Gift Shop unequivocally took the position that it would not have accepted a policy without OPE coverage had it been brought to its attention. Granite State, however, renewed the policy with altered terms by failing to include the OPE in the policy and by failing to notify the Gift Shop. The remedy for this dereliction is to treat the policy as having contained the OPE, as the district court did, because that is the only way the policy would, in effect, remain unaltered at renewal. Therefore, we conclude that the district court was correct in granting judgment in the Gift Shop's favor because Granite State failed to comply with NRS 687B.350.

*Offer of Judgment; Costs and Attorneys' Fees*

The district court's award of costs and attorneys' fees to Granite State was based on a post-trial recovery by the Gift Shop of $113,883.00, which was less than Granite State's offer of judgment, which was $125,000.00. The Gift Shop claims that the district court erred with respect to that award. However, due to the resulting increased recovery for the Gift Shop, our conclusion as to net sales and incremental rent renders these claims moot. The Gift Shop's total loss was $999,051.00, and the full policy limit was $960,000.00. Before trial, Granite State paid $379,546.00 to the Gift Shop, and after trial the district court allowed an additional $113,883.00 in damages, for a total of $493,429.00. Testimony indicated that, given the deduction for incremental rent, the Gift Shop's percentage recovery of its loss would rise from 49.39 percent to 61.0 percent, which is an increase of $115,989.82. This amount of additional recovery, added to the award of $113,883.00 which we have affirmed, easily renders the Gift Shop's total recovery in excess of Granite State's offer of judgment of $125,000.00. Accordingly, since our

decision means that the Gift Shop's recovery will be greater than the offer of judgment, we hereby vacate the award of costs and attorneys' fees to Granite State.

*Conclusion*

In summary, we conclude that the district court: (1) properly ruled that Harmon was the Gift Shop's agent and it was not Granite State's agent, (2) properly ruled that Harmon was not the agent of Granite State for the purposes of proving negligent supervision, (3) properly denied reformation of the policy, and (4) properly excluded evidence of Granite State's alleged independent negligence. However, the district court erred in its definition and application of the terms net sales and incremental rent. We further conclude that the district court did not err in awarding damages to the Gift Shop based on the absence of statutory notice from Granite State as to renewal of the policy without OPE coverage, but we vacate the award of costs and attorneys' fees to Granite State because our ruling on the issue of incremental rent will result in an award to the Gift Shop in excess of Granite State's offer of judgment.

For the reasons set forth above, we remand this case to the district court for proceedings consistent with this opinion.

SPRINGER, V. C. J., ROSE, STEFFEN and YOUNG, JJ., and SHEARING, D. J.,[5] concur.

───────

[5]The Honorable Miriam Shearing, Judge of the Eighth Judicial District Court, was designated by the Governor to sit in place of THE HONORABLE JOHN C. MOWBRAY, Chief Justice. Nev. Const. art. 6, § 4.