VOLVO CARS OF NORTH AMERICA, INC.; VOLVO CAR CORPORATION; AND AB VOLVO, APPELLANTS, *v.* PATRICK A. RICCI AND PATRICIA RICCI, HUSBAND AND WIFE, RESPONDENTS.

No. 45439

July 13, 2006                     137 P.3d 1161

*Law Offices of Greg W. Marsh, Chtd.*, and *Greg W. Marsh*, Las Vegas; *Bowman and Brooke LLP* and *David W. Graves Jr.*, Minneapolis, Minnesota, for Appellants.

*Peter Chase Neumann*, Reno; *Coben & Associates* and *Larry E. Coben*, Scottsdale, Arizona, for Respondents.

*Bradley Drendel & Jeanney* and *Thomas E. Drendel*, Reno, for Amicus Curiae Nevada Trial Lawyers Association.

*Perry & Spann* and *Charles W. Spann*, Reno; *Harvey Grossman*, Los Angeles, California, for Amicus Curiae Product Liability Advisory Council, Inc.

## OPINION

By the Court, GIBBONS, J.:

The United States District Court has certified two questions to this court concerning the admissibility of government and industry automobile safety standards in a strict products liability action based on design defect. We conclude that the questions are not amenable to certification under NRAP 5 because our answers could not in any sense "be determinative" of the federal action. Therefore, we decline to answer them.

### FACTS

Respondent Patrick Ricci, who was driving his 1986 Volvo 740, was rendered a quadriplegic in a rollover accident. The roof over his head had "tented" down into his head, severely compressing his spine and causing his disability. Ricci and his wife sued Volvo in state court; Volvo removed the action to federal court, with Senior District Judge Edward Reed presiding over the trial. At

trial, Volvo sought to introduce evidence of a federal roof-strength standard, in an effort to show that its car was not defective since it met the standard. Volvo also sought to admit industry standard evidence, in the form of roof strength data for other passenger cars, to show that its vehicle was at least as strong as other cars on the market. The Riccis opposed introduction of this evidence, arguing that such standards were irrelevant to their expectations as consumers.

Relying on this court's opinion in *Robinson v. G.G.C., Inc.*,[1] Judge Reed admitted the federal and industry standards evidence. Volvo prevailed at trial, and the Riccis appealed the judgment to the Ninth Circuit. In an unpublished decision, the Ninth Circuit reversed on the basis of an erroneous jury instruction unrelated to the admission of this evidence.

Although the Ninth Circuit did not base its reversal on the admission of federal and industry standards concerning roof strength, it disapproved, in lengthy dictum, the standards' admission. In its discussion, the Ninth Circuit noted the district court's reliance on this court's *Robinson* opinion. *Robinson* involved a strict products liability action, in which the defendant asserted at trial that its machine was not defective, and in fact that it was ''state of the art.'' The plaintiff then sought to admit evidence of a government standard that was released three years after the machine was manufactured, as well as evidence of other designs available at the time the machine was made, to rebut the defendant's claim that its machine had the best safety features available at the time. This court held that the district court erred in excluding this evidence. In its decision in the present case, the Ninth Circuit emphasized this procedural posture in stating that it was not clear whether *Robinson* permits a defendant to introduce such standards to show that no defect existed. Consequently, the Ninth Circuit inferred that it was uncertain whether this court would apply *Robinson*'s holding when a standard was offered by a defendant to show lack of a defect, rather than offered by a plaintiff to rebut a ''state of the art'' defense.

On remand, faced with the Ninth Circuit's discussion of *Robinson*, Judge Reed certified the following questions to this court:

> In a strict liability action alleging that the roof-strength design of a motor vehicle was defective, is evidence of the vehicle's compliance with government standards for roof strength admissible as a defense to liability under Nevada law?

> In a strict liability action alleging that the roof-strength design of a motor vehicle was defective, is evidence of the vehicle's conformity or non-conformity to industry practices for roof

---

[1]107 Nev. 135, 808 P.2d 522 (1991).

strength admissible as a defense to liability under Nevada law?

Briefing was ordered and completed, and amicus briefs were filed by the Nevada Trial Lawyers Association and the Product Liability Advisory Council.

## DISCUSSION

In their answering brief, the Riccis raise the threshold issue of whether evidentiary issues are properly the subject of questions certified under NRAP 5. NRAP 5(a) authorizes this court to answer certified questions of law that "may be determinative of the cause then pending in the certifying court":

> **Power to Answer.** The Supreme Court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, when requested by the certifying court, if there are involved in any proceeding before those courts questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court of this state.

As the certified questions are clearly "questions of law," the propriety of these questions' certification thus turns on the interpretation of the phrase, "may be determinative of the cause then pending." The phrase is somewhat ambiguous, because the words "determinative of the cause" suggest that certification is appropriate only when a question's answer terminates the federal litigation, while the word "may" indicates that a court may exercise some discretion in evaluating when certified questions should be answered.

The phrase, "may be determinative of the cause then pending," was apparently made part of the 1967 Uniform Certification of Questions of Law Act[2] to ensure that answers to certified questions were not merely advisory opinions.[3] NRAP 5 is based on the

---

[2] Unif. Certification of Questions of Law Act (1967 Act) § 1, 12 U.L.A. 86 (1996) (amended 1995). The 1995 amendment to the Uniform Act substantially broadened the provision's scope by altering the language to permit certification when a question's answer "may be determinative of an issue in pending litigation." Unif. Certification of Questions of Law Act (1995 Act) § 3, 12 U.L.A. 73 (1996 & Supp. 2006). Only seven jurisdictions have adopted the 1995 language. *See id.* at 27 (Supp. 2006) (Table of Jurisdictions Wherein Act Has Been Adopted).

[3] *See, e.g., In re Richards,* 223 A.2d 827, 830-32 (Me. 1966) (analogizing the issues with respect to certification procedures to those involved in declaratory judgment matters and concluding that certification was permissible under

Uniform Act, as are most other states' analogous rules or statutes.[4] Accordingly, NRAP 5's language appears in most other states' provisions on certified questions. We may thus look to other states' interpretations of the Uniform Act in discerning what "may be determinative of the cause" means.

Courts have interpreted this phrase in various ways. At one extreme is the Wyoming Supreme Court, which has interpreted the phrase to mean that a question is properly certified only if its answer will completely resolve the federal case.[5] This position has been widely criticized.[6] Other courts have interpreted the phrase somewhat more broadly, permitting certification if one of the possible answers will conclude the federal case (whereas a different answer might require more proceedings in federal court) or if the answer may resolve one of the pending claims, even if not the entire case.[7]

Arkansas, California and New Mexico have an even more liberal standard.[8] In particular, California has considered certified ques-

---

the court's "judicial power" in appropriate cases); Richard Alan Chase, Note, *A State Court's Refusal to Answer Certified Questions: Are Inferences Permitted?*, 66 St. John's L. Rev. 407, 417-18 (1992); *see generally* 17A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4248 (2d ed. 1988 & Supp. 2006).

[4]Wright, *supra* note 3, § 4248.

[5]*Matter of Certified Question from U.S. Dist. Ct., Etc.*, 549 P.2d 1310, 1311 (Wyo. 1976) (stating that the court will answer a certified question only when "there is nothing left for the trial court to do but apply our answer to the question or questions and enter judgment").

[6]*See, e.g.*, *Western Helicopter v. Rogerson Aircraft*, 811 P.2d 627, 630 n.4 (Or. 1991); *Schlieter v. Carlos*, 775 P.2d 709, 711 (N.M. 1989); *see also* Wright, *supra* note 3, § 4248, at 169.

[7]*White v. Edgar*, 320 A.2d 668, 683-84 (Me. 1974) (holding that certification is proper if one alternative answer to certified question will finally dispose of federal action); *Yesil v. Reno*, 705 N.E.2d 655, 656 (N.Y. 1998) (refusing to answer a certified question from the Second Circuit Court of Appeals concerning New York's long-arm statute when other grounds for personal jurisdiction appeared to exist, so that it was unlikely that the question was "dispositive," and when the immigration context of the case was federal and thus unlikely to arise in state court cases); *Western Helicopter*, 811 P.2d at 630-31 (refusing to answer a certified question when there existed "controlling precedent" from the state intermediate court of appeals, and noting that certification could be appropriate when the question's answer could, in one or more of forms it could take, have the potential to determine at least one claim in the case).

[8]*Longview Production Co. v. Dubberly*, 99 S.W.3d 427, 429 (Ark. 2003) (permitting certification when important reasons favor it, including any one of the following circumstances: (1) the question is one of first impression and substantial public importance, (2) the question has resulted in conflicting decisions in other courts, or (3) the question concerns an unsettled issue regarding the constitutionality or construction of a state statute); *Ventura Group v.*

tions when its answers may "be determinative" of part of the federal case, there is no controlling California precedent, and the answer will help settle important questions of law.[9] We determine that this interpretation best serves the purposes of NRAP 5: federalism, comity and judicial efficiency.[10]

Applying the California standard to the questions posed by the federal district court in this case, we conclude that certification is not appropriate. While we sympathize with the position in which the federal district court was placed by the Ninth Circuit's dictum, answers to the questions posed by it would not "be determinative" of any part of the case, but rather, would resolve only a discrete evidentiary issue. We are not prepared to be called upon to resolve pretrial state law evidentiary issues that will have, at best, a speculative impact in determining the underlying case. To answer the questions here, essentially to resolve a motion in limine before the federal trial, would not promote judicial efficiency either for this court or for the federal courts.

Accordingly, we respectfully decline, in our discretion, to answer the questions certified by the United States District Court.

ROSE, C. J., BECKER, MAUPIN, DOUGLAS, HARDESTY and PARRAGUIRRE, JJ., concur.

---

*Ventura Port Dist.*, 16 P.3d 717, 719 (Cal. 2001); *Schlieter*, 775 P.2d at 710 (interpreting phrase to include situations when a certified question's answer resolves an issue, and resolution of the issue materially advances the ultimate termination of the federal litigation).

[9]*Ventura Group*, 16 P.3d at 719.

[10]*White*, 320 A.2d at 675-76; *Western Helicopter*, 811 P.2d at 632-34.