OPINION
 

 By the Court,
 

 Saitta, J.:
 

 The United States District Court for the District of Nevada has certified, under NRAP 5, the following question to this court: “[wjhether, under Nevada law, an additional insured endorsement provides coverage for an injury caused by the sole independent negligence of the additional insured?” We answer the question in the affirmative and conclude that, unless the contrary intent is demonstrated by specific language excluding or limiting coverage for injuries caused by the additional insured’s independent negligent acts, there is coverage.
 

 
 *321
 

 FACTS AND PROCEDURAL HISTORY
 

 Respondent American Hardware Mutual Insurance Company issued a liability insurance policy to its named insured, Clark Lift West, Inc. Because Clark Lift provided maintenance and repair services at the Sparks, Nevada, facility of appellant Southern Wine and Spirits of America, Inc., American Hardware issued an endorsement naming Southern Wine as an additional insured under Clark Lift’s policy. The endorsement provided that Southern Wine, as an additional insured, was covered for liability, ‘ ‘but only with respect to liability arising out of [the named insured’s] ongoing operations performed for that [additional] insured.”
 

 Shortly after American Hardware issued the insurance policy and additional insured endorsement, a Clark Lift employee, Charles Pierce, was injured at the Sparks facility while acting within the course and scope of his employment. Pierce filed a personal injury complaint against Southern Wine in the state district court, seeking to recover damages for Southern Wine’s negligence in causing his injuries. According to Pierce’s complaint, as he was attempting to perform mechanical repairs on a conveyor belt drive, the belt unexpectedly began moving, at which time he slipped on a piece of loose cardboard on Southern Wine’s floor and, in reaching out to stop his fall, his hand became caught in the belt mechanism, resulting in serious injuries.
 

 Southern Wine, through its general liability insurer, appellant Federal Insurance Company, tendered the defense of Pierce’s personal injury action to American Hardware, in light of the additional insured endorsement. American Hardware refused the tender on the grounds that its additional insured endorsement did not cover the additional insured’s direct acts of negligence and their coverage was triggered only when the alleged negligence could be imputed to the additional insured through the named insured’s operations,
 
 i.e.,
 
 when the additional insured can be held vicariously liable for the named insured’s negligence.
 

 Federal Insurance and Southern Wine then filed a declaratory relief action in the state district court, seeking a judicial determination and declaration that American Hardware had a duty to provide coverage to Southern Wine under the endorsement, in connection with the Pierce litigation. American Hardware removed the declaratory relief matter to the United States District Court for the District of Nevada. During the federal proceedings, the parties filed a stipulation of facts for purposes of cross-motions for summary judgment, stipulating that Pierce’s accident and injury occurred as set forth in Pierce’s complaint. The U.S. District Court then certified the following question to this court pursuant to NRAP 5: Under Nevada law, does an additional insured endorsement provide coverage for an injury caused by the sole independent negligence of the additional insured?
 

 
 *322
 

 DISCUSSION
 

 The decision to consider any certified question is within our discretion.
 
 [2]
 
 In determining whether to exercise our discretion to consider a certified question, we look to whether (1) the certified question’s answer may be determinative of part of the federal case, (2) controlling Nevada precedent exists, and (3) the answer will help settle important questions of law.
 
 [3]
 
 Because the answer to the question presented here will be, at least in large part, determinative of the pending federal action, and because this court has not previously considered whether an additional insured endorsement covering acts that “arise out of” the named insured’s operations provides coverage for an injury caused by the sole independent negligence of the additional insured, we answer the question certified to us.
 

 The U.S. District Court asks us to interpret the insurance policy’s endorsement to determine the scope of coverage it provides. When the facts are not in dispute, contract interpretation is a question of law.
 
 [4]
 
 In the insurance context, we broadly interpret clauses providing coverage, to afford the insured the greatest possible coverage; correspondingly, “clauses excluding coverage are interpreted narrowly against the insurer.”
 
 [5]
 
 When an insurance policy clause is ambiguous, the ambiguity must be resolved against the insurer and in favor of the insured.
 
 [6]
 

 The additional insured endorsement is ambiguous
 

 In this case, Federal Insurance and Southern Wine argue that the policy’s additional insured endorsement language is ambiguous with regard to the scope of coverage provided. In particular, they assert that the endorsement is unclear as to whose negligence is covered and whose negligence is excluded, and that, applying a broad interpretation, as Nevada and the majority of jurisdictions do in insurance cases, the endorsement must be read to cover Southern Wine for any negligent acts performed by it that give rise to liability in Pierce’s action. We agree.
 

 
 *323
 
 Although American Hardware contends that the endorsement clearly and unambiguously precludes coverage for liabilities caused by the additional insured’s own negligence, we have previously stated that an insurer wishing to restrict a policy’s coverage should use language that “clearly and distinctly communicates to the insured the nature of the limitation.”
 
 [7]
 
 Here, American Hardware’s endorsement contains no such distinctly limiting language. Indeed, this court as well as other jurisdictions has recognized that the scope of coverage provided by virtue of the phrase “arising out of [the named insured’s] operations” is ambiguous, since it is unclear whose acts are covered.
 
 [8]
 
 Specifically, under one reasonable interpretation, the endorsement limits coverage to circumstances in which the named insured’s negligent acts or operations directly caused the plaintiff’s injury, that is, circumstances in which the additional insured is held vicariously liable for the named insured’s negligence.
 
 [9]
 
 Under another reasonable interpretation, however, the endorsement covers the additional insured’s direct negligence, so long as the plaintiff’s injury has some connection to the work or operations that the named insured performed for the additional insured.
 
 [10]
 
 Thus, in accordance with our precedent and consistent with persuasive authority from other jurisdictions, we conclude that the endorsement here, which covers the additional insured “only with respect to liability arising out of [the named insured’s] ongoing operations performed for [the additional insured],” is ambiguous, since it is reasonable to interpret that language both in favor of and against coverage for the additional insured’s independent negligence.
 
 [11]
 

 The ambiguity must be resolved in favor of the insured
 

 Federal Insurance and Southern Wine maintain that the endorsement covers the additional insured’s negligent acts, provided
 
 *324
 
 that the acts were related to the named insured’s operations at the additional insured’s facility. Thus, Federal Insurance and Southern Wine suggest that, when a loss occurs or an injury is suffered in connection with work performed on behalf of the named insured for the additional insured, the additional insured is entitled to coverage under the endorsement.
 

 American Hardware responds that the additional insured’s independent intervening negligent act caused the injury and that its negligence was unrelated to the named insured’s operations at the additional insured’s facility, thus precluding coverage. According to American Hardware, broadly construing the “arising out of” language in the endorsement is contrary to the endorsement’s purpose of protecting general contractors or business owners from liability for subcontractors’ or independent contractors’ negligent acts. Thus, American Hardware contends, the endorsement covers the additional insured only for instances of vicarious liability based on the named insured’s negligent acts.
 

 Applying our contract and insurance policy construction rules, under which we broadly interpret clauses providing coverage and generally interpret ambiguous terms in favor of the insured,
 
 [12]
 
 we construe the endorsement here as providing coverage to the additional insured for its own independent negligence connected to the named insured’s operations performed for the additional insured. As set forth below, our construction of the endorsement comports both with Nevada jurisprudence, concerning contract interpretation and insurance disputes, and with that of a number of other jurisdictions that have addressed the same issue.
 

 Nevada jurisprudence
 

 At the outset, we point out that this court’s decision in
 
 National Union Fire Insurance
 
 v.
 
 Caesars Palace
 
 evaluated a similarly worded additional insured endorsement, issued in the sports special events context. In that case, we concluded that, by virtue of the endorsement’s “arising out of operations” language, the endorsement was ambiguous as to its scope of coverage.
 
 [13]
 
 Factually,
 
 National Union Fire Insurance
 
 arose from an incident following a boxing match promoted by the named insured and held in a temporary arena in the additional insured’s parking lot.
 
 [14]
 
 In that case, a spec
 
 *325
 
 tator was injured while exiting the arena through a corridor leading to the additional insured’s hotel after an unrelated third party shouted, “Watch out, he has a gun,” and the crowd of other spectators panicked and stampeded through the corridor.
 
 [15]
 
 Although no shots apparently were fired, the spectator suffered injuries as a result of the stampede.
 
 [16]
 
 The additional insured and the insurance company providing the endorsement disputed whether the spectator’s injuries fell within the endorsement’s scope of coverage since the injuries occurred after the boxing match and inside of the additional insured’s hotel.
 
 [17]
 

 In reversing a district court order that granted partial summary judgment in favor of the additional insured, we explained that, when resolving an ambiguous insurance policy, the district court should consider not only the policy’s language, but also the parties’ intentions, the policy’s subject matter, and the circumstances surrounding the policy’s issuance.
 
 [18]
 
 Consistent with earlier precedent, this court reasoned that the policy should also be “construed to effectuate the reasonable expectations of the insured.”
 
 [19]
 
 Then, in remanding the matter to the district court for further consideration of those factors, we explained that the district court should have allowed additional discovery in order to ascertain the parties’ intentions, pointing out that, in the area of special events insurance, extrinsic evidence of custom and usage could be helpful in establishing what scope of coverage the parties intended by using the term “arising out of operations.”
 
 [20]
 

 Thus, similar to the instant matter,
 
 National Union Fire Insurance
 
 involved an additional insured endorsement scope of coverage question. But in
 
 National Union Fire Insurance,
 
 we were concerned with the lack of any opportunity for the insurance company to conduct discovery; thus, we did not determine whether, in the absence of any discovered intent to the contrary, the additional insured endorsement should be constmed to effectuate the reasonably presumed intent of the additional insured in favor of coverage.
 

 Here, however, American Hardware contends that intent to the contrary exists, since Southern Wine maintained its own general liability policy, indicating that the additional insured endorsement was intended merely to insulate Southern Wine from third-party claims related to Clark Lift’s negligence. As a result, American
 
 *326
 
 Hardware insists, the parties’ reasonable expectations were that the endorsement covers Southern Wine only for instances in which no other coverage otherwise would exist, compelling an interpretation of no coverage for Southern Wine’s independent negligence.
 

 Nevertheless, based on the record before us, we cannot agree that such was the parties’ expectation. The record before us bears no indication of what negotiations or discussions took place in issuing the endorsement, if any, industry customs and usages, or any other matters that might reflect the parties’ mutual understanding concerning a limited scope of coverage. Thus, while the factors set forth in
 
 National Union Fire Insurance
 
 remain relevant to the U.S. District Court’s determination of the underlying matter, the only issue before us today involves the meaning and application of the endorsement’s language in light of the parties’ stipulated facts, which is purely an issue of law.
 
 [21]
 
 Accordingly, we exercise our independent judgment in evaluating the legal effect of those facts.
 
 [22]
 

 In exercising our independent judgment in the absence of any concrete facts pointing to a different intent, we turn to our traditional rules for interpreting ambiguous insurance contracts: unclear terms are interpreted against the insurer and, unless express limiting language exists, in favor of coverage.
 
 [23]
 
 Therefore, without concrete evidence of a different intent, when the term “arising out of the operations” of a named insured is included in an additional insured provision, that term must be read to include coverage for acts arising from the additional insured’s own negligence. Accordingly, here, given that the language used in the endorsement does not allocate fault, and in light of our rule to broadly construe insurance policies in favor of coverage, it seems objectively reasonable that the additional insured would have expected that the endorsement provides coverage for liability connected to the named insured’s operations, regardless of who was at fault.
 
 [24]
 

 
 *327
 

 Other jurisdictions
 

 With respect to the term “arising out of the operations,” several other courts likewise have construed that term in favor of coverage, determining that an insurer’s failure to use restrictive language to exclude specified types of liability infers that the parties intended not to so limit coverage.
 
 [25]
 

 For example, in
 
 Acceptance Insurance Co.
 
 v.
 
 Syufy Enterprises,
 
 a California appellate court applied a broad interpretation to the term “arising out of” in an additional insured endorsement.
 
 [26]
 
 In that case, the additional insured owned a theater, and it contracted with the named insured to upgrade certain electrical features. When one of the named insured’s employees was injured as he was leaving the jobsite through a defective roof hatch, he sued the additional insured for negligence.
 
 [27]
 
 In light of the endorsement, the additional insured tendered the defense to the named insured’s insurance company, and on appeal from a summary judgment, the appellate court concluded that, even though the named insured was not performing work on the hatch, the insurance company was required to defend the action because the relationship between the defective hatch and the employee’s job was more than incidental, in that the employee could not have done the job without passing through the hatch.
 
 [28]
 
 The court reasoned that the “arising out of” words did not import any particular standard of causation or theory of liability into an insurance policy, but instead, they broadly linked a factual situation with the event creating liability and connoted “only a minimal causal connection or incidental relationship.”
 
 [29]
 
 Thus, although the defect was attributable to the additional insured’s negligence, that fact was irrelevant since the endorsement language did not purport to allocate coverage according to fault.
 
 [30]
 

 Other jurisdictions agree. Indeed, the majority of jurisdictions resolving disputes over whether coverage extends to the additional insured’s own negligent acts have interpreted additional insured endorsements in favor of coverage, regardless of fault, provided that the injury or loss is connected to the named insured’s operations performed for the additional insured. Thus, the common approach in addressing questions concerning whether injury or loss caused by the additional insured’s own negligence falls within the scope of
 
 *328
 
 an additional insured endorsement is to broadly construe an endorsement’s “arising out of” language as including instances when liability was occasioned by the additional insured’s independent negligence.
 
 [31]
 

 In light of this jurisprudence and applying our rules of contract construction, which direct broad interpretation of the term “arising out of the named insured’s operations” in favor of coverage, we conclude that the term here does not preclude coverage for the additional insured’s own negligent acts because, if those acts can be linked to the named insured’s operations and are causally connected to the injury, the term does not allocate fault. Although an insurer may limit the coverage provided to an additional insured, in order to do so, it must include in the endorsement explicit language that would exclude particular causes of losses suffered.
 
 [32]
 
 Absent an express exclusion, we are bound to construe the insurance term
 
 *329
 
 broadly, in favor of coverage.
 
 [33]
 
 Thus, we conclude that, when an additional insured endorsement simply covers liabilities arising out of operations of the named insured performed for the additional insured, that endorsement includes coverage for liabilities caused by the additional insured’s direct negligent acts, so long as those acts are connected to the named insured’s operations performed for the additional insured.
 

 CONCLUSION
 

 The additional insured provision is ambiguous, and we therefore construe it against the insured in favor of coverage. Accordingly, we answer the certified question in the affirmative: absent an expressed intent to the contrary, an additional insured endorsement that covers liabilities arising out of a named insured’s operations performed for the additional insured provides liability coverage, regardless of fault, so long as the injury or loss suffered is connected to the named insured’s operations performed for the additional insured’s benefit.
 

 Gibbons, C. J., Hardesty, Parraguirre, Douglas and Cherry, JJ., concur.
 

 [2]
 

 NRAP 5;
 
 Volvo Cars of North America v. Ricci,
 
 122 Nev. 746, 751, 137 P.3d 1161, 1164 (2006).
 

 [3]
 

 Volvo Cars of North America,
 
 122 Nev. at 751, 137 P.3d at 1164 (citing
 
 Ventura Group v. Ventura Port Dist.,
 
 16 P.3d 717, 719 (Cal. 2001)).
 

 [4]
 

 Grand Hotel Gift Shop v. Granite St. Ins.,
 
 108 Nev. 811, 815, 839 P.2d 599, 602 (1992).
 

 [5]
 

 National Union Fire Ins. v. Reno’s Exec. Air,
 
 100 Nev. 360, 365, 682 P.2d 1380, 1383 (1984).
 

 [6]
 

 Id.
 
 at 365, 682 P.2d at 1383.
 

 [7]
 

 Id.
 
 at 364, 682 P.2d at 1382.
 

 [8]
 

 See National Union Fire Ins.
 
 v.
 
 Caesars Palace,
 
 106 Nev. 330, 332-33, 792 P.2d 1129, 1130 (1990);
 
 St. Paul Fire & Marine v. American Dynasty,
 
 124 Cal. Rptr. 2d 818, 831 (Ct. App. 2002);
 
 Container Corp. of America v. MD Cas. Co.,
 
 707 So. 2d 733, 736 (Fla. 1998).
 

 [9]
 

 See Davis v. LTV Steel Co., Inc.,
 
 716 N.E.2d 766, 769 (Ohio Ct. App. 1998) (concluding that the phrase “arising out of [the named insured’s] operations” was intended to protect the additional insured from any liability for the negligence of the named insured’s employees who would be performing work at the additional insured’s business).
 

 [10]
 

 See Acceptance Ins. Co. v. Syufy Enterprises,
 
 81 Cal. Rptr. 2d 557, 563 (Ct. App. 1999) (concluding that “when an insurer . . . grants coverage for liability ‘arising out of’ the named insured’s work, the additional insured is covered without regard to whether injury was caused by the named insured or the additional insured”) (citations omitted).
 

 [11]
 

 See Margrave v. Dermody Properties,
 
 110 Nev. 824, 827, 878 P.2d 291, 293 (1994) (explaining that a “contract is ambiguous if it is reasonably susceptible to more than one interpretation”).
 

 [12]
 

 Reno’s Exec. Air,
 
 100 Nev. at 365, 682 P.2d at 1383.
 

 [13]
 

 106 Nev. 330, 333, 792 P.2d 1129, 1130 (1990). In
 
 National Union Fire Insurance,
 
 the endorsement provided coverage to the additional insured “ONLY WITH RESPECT TO LIABILITY ARISING OUT OF OPERATIONS PERFORMED FOR [the additional] INSURED, BY OR ON BEHALF OF THE NAMED INSURED.”
 
 Id.
 
 at 331-32, 792 P.2d 1129-30.
 

 [14]
 

 Id.
 
 at 331-32, 792 P.2d at 1129-30.
 

 [15]
 

 Id.
 
 at 332, 792 P.2d at 1130.
 

 [16]
 

 Id.
 

 [17]
 

 Id.
 

 [18]
 

 Id.
 
 at 332-33, 792 P.2dat 1130.
 

 [19]
 

 Id.
 
 at 333, 792 P.2d at 1130 (citing
 
 National Union Fire Ins.
 
 v.
 
 Reno’s Exec. Air, 100
 
 Nev. 360, 365, 682 P.2d 1380, 1383 (1984)).
 

 [20]
 

 Id.
 
 at 333, 792 P.2d at 1130-31.
 

 [21]
 

 Grand Hotel Gift Shop v. Granite St. Ins.,
 
 108 Nev. 811, 815, 839 P.2d 599, 602 (1992).
 

 [22]
 

 See NOLM, LLC v. County of Clark,
 
 120 Nev. 736, 739, 100 P.3d 658, 661 (2004);
 
 see also Berg v. Popham,
 
 113 P.3d 604, 607 (Alaska 2005) (indicating that, in deciding a question of law upon certification from another court, the answering court stands in the certifying court’s shoes, yet exercises its independent judgment).
 

 [23]
 

 National Union Fire Ins. v. Reno’s Exec. Air,
 
 100 Nev. 360, 364-65, 682 P.2d 1380, 1382-83 (1984).
 

 [24]
 

 Anuvi, LLC v. G.L. Dragon,
 
 LLC, 123 Nev. 212, 215, 163 P.3d 405, 407 (2006) (indicating that intent can be ascertained from the contract and the circumstances surrounding it);
 
 National Union Fire Ins.,
 
 106 Nev. at 333, 792 P.2d at 1130 (explaining that, when an ambiguity is found, “the policy should be construed to effectuate the reasonable expectations of the
 
 insured”
 
 (emphasis added));
 
 Reno’s Exec. Air,
 
 100 Nev. at 365, 682 P.2d at 1383 (noting that ambiguous insurance policy provisions are interpreted in favor of coverage).
 

 [25]
 

 See, e.g., Acceptance Ins. Co. v. Syufy Enterprises,
 
 81 Cal. Rptr. 2d 557, 562-63 (Ct. App. 1999);
 
 Marathon Ashland Pipe Line v. Maryland Cas.
 
 Co., 243 F.3d 1232, 1240 n.5. (10th Cir. 2001);
 
 Merchants Ins. Co. of New Hampshire, Inc.
 
 v.
 
 U.S. Fidelity and Guar. Co.,
 
 143 F.3d 5, 10 (1st Cir. 1998).
 

 [26]
 

 81 Cal. Rptr. 2d. 557.
 

 [27]
 

 Id.
 
 at 559.
 

 [28]
 

 Id.
 
 at 561.
 

 [29]
 

 Id.
 

 [30]
 

 Id.
 

 [31]
 

 See Merchants Ins. Co. of New Hampshire, Inc. v. USF&G,
 
 143 F.3d 5, 9-10 (1st Cir. 1998) (rejecting the insurer’s assertion that the standard “arising out of” language limited coverage to instances where the additional insured was vicariously liable as the result of the named insured’s activities and instead concluding that because the employee’s injuries “arose out of” the named insured’s work in the sense that the employee was performing a task called for in the construction contract between the named insured and additional insured, the endorsement covered the additional insured for its own negligence as well as for any vicarious liability);
 
 Mid-Continent Cas. Co. v. Swift Energy Co.,
 
 206 F.3d 487, 498 (5th Cir. 2000) (interpreting an additional insured endorsement’s “arising out of the named insured’s operations” language and concluding that coverage applies so long as the named insured’s employee was injured while present at the scene in connection with performing the named insured’s business, even if the additional insured’s negligent acts caused the injury);
 
 McIntosh v. Scottsdale Ins. Co.,
 
 992 F.2d 251, 254-55 (10th Cir. 1993) (explaining that the phrase “arising out of” clearly relates to causation but liberally construing it to require something less than proximate causation to conclude that the additional insured was covered for the injured party’s tort judgment as a matter of law, since the injured party was present on the additional insured’s premises because of the named insured’s event, thus satisfying the requisite causal connection between the named insured’s operations and the injury);
 
 Shell Oil Co. v. AC & S, Inc.,
 
 649 N.E.2d 946, 952 (Ill. App. Ct. 1995) (construing the words “arising out of [the named insured’s] operations” in fevor of coverage because, even though the named insured’s employee’s injuries resulted from the additional insured’s negligence, the employee would not have been present on the additional insured’s premises were it not for the named insured’s operations);
 
 see also
 
 Douglas R. Richmond,
 
 The Additional Problems of Additional Insureds,
 
 33 Tort & Ins. L.J. 945, 958 (1998) (recognizing that a “liberal interpretation of the additional insured endorsement is fast becoming the majority rule”).
 

 [32]
 

 See National Union Fire Ins.
 
 v.
 
 Reno’s Exec. Air,
 
 100 Nev. 360, 364, 682 P.2d 1380, 1384 (1984);
 
 cf. BP Chemicals, Inc.
 
 v.
 
 First State Ins. Co.,
 
 226 F.3d 420, 425-26 (6th Cir. 2000) (construing an additional endorsement against coverage for liability caused by the additional insured’s own negligence when the additional insured endorsement explicitly “exclude[ed coverage for] any negligent acts committed by the additional insured”).
 

 [33]
 

 The rules for interpreting insurance terms broadly in favor of coverage and construing any ambiguous terms against the insurer embody Nevada’s public policy to afford coverage whenever warranted and to hold the typically more experienced party and contract drafter — named insured’s company-responsible for clearly delineating its coverage to generally less experienced parties. According to American Hardware, however, allowing coverage for an additional insured’s independent negligent acts is contrary to the public policy of encouraging the exercise of reasonable care because it removes the additional insured’s monetary incentive to prevent accidents.
 
 See Nat. Union Fire Ins. Co. v. Nationwide Ins.,
 
 82 Cal. Rptr. 2d 16, 21-22 (Ct. App. 1999) (interpreting a restrictive additional insured endorsement that explicitly limited coverage to exclude the additional insured’s own alleged negligence and pointing out that the exclusionary language furthered California’s interest in preventing construction-related accidents). We agree that encouraging reasonable care is an important policy concern, and consequently, as pointed out above, we have recognized that insurers may restrict coverage to specific incidents of negligence, and thus may exclude particular causes of losses or injuries suffered, through the use of explicit language in the insurance contract limiting coverage.