**GREAT AMERICAN INSURANCE COMPANY OF NEW YORK,**
Plaintiff,

v.

**NORTH AMERICAN SPECIALTY INSURANCE COMPANY,**
Defendant.

**No. 03:06–CV–00136–LRH–RAM.**

United States District Court,
D. Nevada.

Feb. 12, 2008.

---

Dominica C. Anderson, Jennifer D. McKee, Ryan A. Loosvelt, Duane Morris, LLP, Las Vegas, NV, for Plaintiff.

Ryan M. Venci, Ryan Mercaldo & Worthington LLP, Las Vegas, NV, Brian P. Worthington, Ryan Mercaldo & Worthington LLP, San Diego, CA, for Defendant.

## ORDER

LARRY R. HICKS, District Judge.

Presently before the court is Defendant North American Speciality Insurance Company's ("NAS") Motion for Summary Judgment (# 16 [1]). In response, Plaintiff Great American Insurance Company ("GAIC") filed an opposition and cross-motion for summary judgment (# 17) to which Defendant replied (# 28).

Defendant also filed a Memorandum of Points and Authorities in Opposition to Plaintiff's Cross–Motion for Summary Judgment (# 42) to which Plaintiff replied (# 44). Plaintiff also filed Objections to Defendant's Evidence in Support of Its Motion for Summary Judgment (# 26) to which Defendant filed a response (# 30).

Defendant also filed Objections to Evidence Submitted by Plaintiff in Its Opposition to Defendant's Motion for Summary Judgment (# 29). Plaintiff filed a response and opposition to Defendant's motion for summary judgment (# 45).

Finally, Plaintiff filed a Motion for Leave to Supplement (1) Plaintiff's Opposition to Defendant's Motion for Summary Judgment and (2) Plaintiff's Cross–Motion

---

1. Refers to the court's docket number.

for Summary Judgment (# 47) to which Defendant filed a response (# 49).

## I. Facts

The following facts are not in dispute by the parties:

In 1998, Brunsonbuilt Construction and Development Co. ("Partnership") operated as Nevada general partnership. Its partners were Douglas Brunson and Edward McCaffery. The Partnership operated as a builder of custom homes and subdivision developer.

In November 1998, the Partnership began construction of a home for Marilyn Skender and David Dziurda in Reno, Nevada.

On December 28, 1998, the Partnership executed a bill of sale in which the Partnership transferred all of its "right, title, and interest in and to all tangible and intangible personal property whether now known, or now or hereafter acquired, including, but not limited to ... accounts, ... instruments, ... documents, ... [and] executory contracts" to Brunsonbuilt Construction and Development Ltd., LLC ("LLC"). Edward McCaffery and Douglas Brunson were and continue to be members and managers of the LLC.

On January 11, 1999, the Partnership entered into a contract with Skender and Dziurda to build the home it had already started constructing.

On March 12, 2001, the LLC sued Skender and Dziurda in state court for not fully paying the LLC for its work.

On December 13, 2001, Skender and Dziurda filed a third-party complaint against the Partnership, Brunson, and McCaffery for deficiencies in construction of the home ("the Skender action"). Brunson and McCaffery were sued individually and as general partners. Plaintiff GAIC defended the Skender action.

On July 22, 2002, Defendant NAS was notified of the claims asserted by Skender and Dziruda in the Skender action. NAS issued two policies to the LLC: the first policy covered August 23, 2001 to August 23, 2002; and the second policy covered August 23, 2002 to August 23, 2003. On August 25, 2004, NAS denied coverage for the allegations in the Skender action and therefore asserted it had no duty to defend or indemnify the LLC.

In December 2002, two of the home's doors blew in during a windstorm.

On October 12, 2004, the Partnership prevailed on the Skender action at trial.

On November 17, 2004, GAIC demanded NAS reimburse GAIC for 50 percent of the costs it incurred in defending the Skender action as well as any future costs.

On March 14, 2006, GAIC filed the present action seeking (1) a declaratory judgment that NAS has a duty to defend and contribute to the Skender action and (2) equitable contribution for the expenses GAIC incurred in defending the Skender action.

On December 28, 2006, the Nevada Supreme Court reversed the trial court that heard the Skender action and remanded for a new trial.

## II. Legal Standard

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. In-*

*dus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *County of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir.2001).

The moving party bears the burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986); *see also Idema v. Dreamworks, Inc.*, 162 F.Supp.2d 1129, 1141 (C.D.Cal.2001).

In order to successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir.2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir.1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient to establish a genuine dispute; there must be evidence on which the jury could reasonably find for the plaintiff. *See id.* at 252, 106 S.Ct. 2505.

## III. Discussion

### A. Defendant's Duty to the LLC

Defendant argues it has no duty to defend the LLC or contribute to its defense because Defendant's insurance policies do not insure the LLC for the alleged construction deficiencies. Defendant's policies state the following regarding its duty to defend the LLC:

1. Insuring Agreement.
 a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

(NAS Policy #1 (#16) Ex. A at NAS01034); NAS Policy #2 (#17) Ex. B at NAS00933.

The Nevada Supreme Court has stated the following with regard to an insurer's duty to defend its insured:

There is no duty to defend "[w]here there is no *potential* for coverage." In other words, "[a]n insurer ... bears a duty to defend its insured whenever it ascertains facts which give rise to the potential of liability under the policy." Once the duty to defend arises, "this duty continues throughout the course of the litigation." If there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured. The purpose behind construing the duty to defend so broadly is to prevent an insurer from evading its obligation to provide a defense for an

insured without at least investigating the facts behind a complaint.

However, "the duty to defend is not absolute." A potential for coverage only exists when there is arguable or possible coverage. Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy.

*United Nat'l Ins. Co. v. Frontier Ins. Co.,* 120 Nev. 678, 99 P.3d 1153, 1158 (2004) (footnotes omitted).

Defendant advances five arguments in support of its contention that it has no duty to defend the LLC.

### 1. Who is an Insured?

First, Defendant contends that the LLC and its members acting in their capacity as LLC members were never named as a defendants in the *Skender* action; therefore, Defendant has no duty to defend the LLC because it is not the subject of the *Skender* action. Defendant bases this argument upon the following provision of its policies:

Section II—Who is an Insured

1. If you are designated in the Declarations as:

. . .

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

(NAS Policy #1 (#16) Ex. A at NAS01026); NAS Policy #2 (#17) Ex. B at NAS00941. From this provision Defendant argues that, because the third-party complaint only names the Partnership, McCaffrey (as an individual and general partner), and Brunson (as an individual and general partner) as defendants in the *Skender* action, no duty to defend the LLC arises.

Plaintiff responds that the third-party complaint's naming of McCaffrey and Brunson as individuals and general partners is irrelevant. What is important, Plaintiff argues, is that the individual members of the Partnership are being sued for conduct they performed as members of the LLC.

Plaintiff's argument is well taken. Whether McCaffrey and Brunson were sued as members of the LLC or the Partnership, the fact remains that the conduct Skender and Dziurda complain of arose out of McCaffrey and Brunson's actions as members of the LLC. After the Partnership sold all of its assets and contracts to the LLC, (Bill of Sale (#16) Ex. M), the LLC's members were engaged in business previously held by the Partnership.[2] That the homeowners named McCaffrey and Brunson as individuals and general partners rather than members of the LLC is immaterial. The fact remains that Defendant's insurance policies cover the LLC's members with respect to the conduct of the LLC's business. That is precisely what Skender and Dziurda complain of in the *Skender* action.

### 2. The Policy's Exclusion for Conduct of a Partnership

Second, Defendant argues that its policies exclude any coverage the LLC would have for conduct of a partnership,

---

**2.** The court recognizes it was the *Partnership* that entered into a contract to build the home even after it had transferred all of its "right, title, and interest in and to all tangible and intangible personal property" to the LLC. However, the bill of sale effecting this transfer also states that the transfer pertained to all assets "whether now known, or now or hereafter acquired." Thus, even though the Partnership was the contracting party, in reality, it was the LLC that promised to build, and in fact built, the home.

and therefore Defendant cannot be compelled to defend a suit for property damage arising from the contract entered by the Partnership and for which the Partnership is sued in the *Skender* action. Defendant bases this contention on the following provision of its policies: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." (NAS Policy # 1 (# 16) Ex. A at NAS01027); NAS Policy # 2 (# 17) Ex. B at NAS00942.

Plaintiff responds in a similar fashion to its response to Defendant's first argument by noting that after the LLC acquired the Partnership's assets and contracts, construction of the home then became the conduct of the LLC, not the Partnership. Again, Plaintiff's argument is well taken. The LLC constructed the home after the Partnership sold the LLC all of the Partnership's assets and contracts. That the Partnership was the contracting party does not alter the fact that the LLC actually constructed the home.

### 3. The Scope of Defendant's Coverage

Third, Defendant argues that throughout the time it was being asked to defend the *Skender* action, it was presented with coverage arguments relating only to two damage allegations: (1) damage caused when the home's doors blew in and (2) damage caused by leaks in the home's roof. Therefore, it cannot have any obligation to defend allegations that were not presented with coverage arguments.

Plaintiff responds that when the LLC tendered defense of the *Skender* action to Defendant, the LLC provided Defendant with a copy of Skender and Dziurda's third-party complaint, which lists forty alleged defects and items of property damage.

The court finds that Defendant has a duty to defend against all the alleged defects listed in the third-party complaint that constitute "property damage" under Defendant's policies. Whether Plaintiff presented coverage arguments with respect to only two damage allegations is immaterial. Defendant has a duty to defend its insured against allegations which give rise to the potential of liability under the policies. This ascertainment is achieved by comparing the allegations of the complaint with the terms of the policies. Defendant was provided with a copy of the third-party complaint in connection with a request that Defendant defend the *Skender* action. (Affidavit of Karl MacGibbon (# 16) at ¶ 2.) The third-party complaint was filed on December 13, 2001, and states that "[a]s of the date of filing this Third–Party Complaint, known construction defects in the residence consist of: [forty separate allegations]." (Third–Party Complaint (# 16) Ex. E at 6–12.) Thus, regardless of whether Plaintiff was presented with coverage arguments for only two damage allegations, Defendant has a duty to defend the LLC with regard to all the allegations in the third-party complaint that constitute "property damage."

### 4. Timing of the Alleged Damage

■ Fourth, Defendant argues it has no duty to defend against the alleged damage resulting from the doors blowing in because its policies do not cover (1) damage the insured knew about before the policy period began and (2) damage that is a continuation, change, or resumption of damage that insured knew about before the policy period. Defendant bases its argument on the following provisions:

b. This insurance applies to "bodily injury" and "property damage" only if:

. . .

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II—Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(NAS Policy #1 (#16) Ex. A at NAS01034); NAS Policy #2 (#17) Ex. B at NAS00950.

The court concludes Defendant has a duty to defend the LLC with regard to the alleged damage resulting from the doors blowing in. As stated above, "[i]f there is any doubt about whether the duty to defend arises, this doubt must be resolved in favor of the insured.... Determining whether an insurer owes a duty to defend is achieved by comparing the allegations of the complaint with the terms of the policy."

■■■ Skender and Brunson alleged various contract and tort actions against the LLC based on its deficient performance in constructing the home. While the court recognizes there is conflicting evidence about whether the damage caused by the doors blowing in was a continuation, change or resumption of property damage that existed before the coverage period, this controversy does not alter Defendant's duty to defend the LLC. Defendant's duty to defend must be determined from comparing the allegations of the complaint with the terms of Defendant's policies. Here, Skender and Brunson allege the LLC's misconduct led to damage of their home. The home's doors blew in during December 2002, which falls into the coverage period of Defendant's second policy. (NAS Policy #2 (#17) Ex. B at NAS00871.) As such, Defendant must defend against the alleged damage caused by this incident.

The parties also dispute when the LLC was first put on notice of the home's ceiling leaks and therefore whether Defendant has a duty to defend against allegations of damage caused by these leaks. Defendant presents evidence that sometime after repairs began in September 2003, Skender noticed that the home's roof was leaking. (Deposition of Marilyn Skender (#16) Ex. P at 96:25–97:9.) Plaintiff, in response, presents evidence that Dziurda and Skender became aware the roof was leaking around the home's external fireplace on or about January 25, 2002, when Apex Roofing inspected the home. (Deposition of David Dziurda (#19) Ex. C at 130:10–131:22; Apex Roofing Condition Report (#19) Ex. B at 1.) Plaintiff also presents evidence that Dziurda and Skender became aware of a leak in the home's main living room in approximately September 2002, when a contractor was in the attic and noticed staining. (Deposition of David Dziurda (#19) Ex. C at 133:21–134:4.)

■■■ Whether the leaks were in fact discovered during or after the policies' coverage period is irrelevant at this juncture. Again, Defendant's duty to defend is determined by comparing the allegations of the complaint with the terms of Defendant's policies. Skender and Dziurda have alleged the LLC's misconduct resulted in damages to their home. While the parties

present conflicting evidence as to whether the roof leaks were discovered before or after Defendant's coverage period, doubts as to the duty to defend must be resolved in favor of the insured. Accordingly, Defendant must defend against the alleged damage caused by the roof leaks.

### 5. Cooperation Clause

■ Fifth, Defendant argues it has no duty to defend the LLC because it failed to fulfill the following clause in its policies:

2. Duties In the Event Of Occurrence, Offense, Claim Or Suit

. . .

c. You and any other involved insured must:

. . .

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit" . . . .

(NAS Policy # 1 (# 16) Ex. A at NAS01028); (# 17) Ex. B, NAS Policy # 2 at NAS00942–43.

Defendant argues the LLC breached this provision by not providing Defendant with the bill of sale, which sold the Partnership's assets to the LLC, after Defendant sent a letter to the LLC asking for documents supporting the position Defendant had a duty to defend the *Skender* action. Plaintiff responds that Karl MacGibbon, Defendant's person most knowledgeable, testified that Defendant was not contending that it had not received enough documentation to determine coverage. (Deposition on Karl R. MacGibbon (# 25) Ex. C at 146:10–147:14.) The court concludes that this conflicting evidence is not sufficient to compel a finding that Plaintiff breached the cooperation clause as a matter of law.

### B. Defendant's Duty to Contribute Money to the LLC's Defense

■ Plaintiff also moves this court for summary judgment on its claim that Defendant must contribute to past defense costs. In response, Defendant points out that Plaintiff has not submitted any expenses that it incurred to defend the *Skender* action. Therefore, it has not shown what contribution it is entitled to as a matter of law.

The court agrees Plaintiff has not presented evidence showing what expenses it is entitled to as a matter of law. However, this lack of evidence does not affect this court's ability to find Defendant is liable for the expenses it should have contributed to the *Skender* action. *See* Fed.R.Civ.P. 56(d)(2) ("An interlocutory summary judgment may be rendered on liability alone, even if there is a genuine issue on the amount of damages."); *see also Thoresen v. Lumbermens Mut. Casualty Co.,* 351 F.2d 573 (7th Cir.1965) (affirming a grant of partial summary judgment against an insurer, which the trial court found liable for legal expenses it should have incurred to defend its insured, although the amount of these expenses was not initially adjudicated).

■ Nevada has not addressed the duty of an insurer to contribute to an insured's defense by another insurer. Therefore, this court must predict how the Nevada Supreme Court would decide this issue "using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Arizona Elec. Power Co-op. v. Berkeley,* 59 F.3d 988, 991 (9th Cir.1995). The Nevada Supreme Court has often turned to California decisions when faced with issues of first impression. *See, e.g., Volvo Cars of North America, Inc. v. Ricci,* 122 Nev. 746, 137 P.3d 1161, 1164 (2006); *Cheung v. Eighth Judicial Dist.*

*Court,* 121 Nev. 867, 124 P.3d 550, 559 (2005). Accordingly, this court will also turn to California law in this case.

As a general rule, an insured's loss should be "equitably distributed among those who share liability for it in direct ratio to the portion each insurer's coverage bears to the total coverage provided by all the insurance policies." *Fireman's Fund Ins. Co. v. Md. Casualty Co.,* 65 Cal. App.4th 1279, 1294 n. 4, 77 Cal.Rptr.2d 296 (1998). However, because the parties have not briefed the amount and type of coverage their policies provide, the court cannot find the proportion of Plaintiff's expenses Defendant must contribute as a matter of law. Therefore, this issue remains for trial.

### C. Plaintiff's Objections to Defendant's Evidence

 Plaintiff has objected to the depositions Defendant has offered in support of its motion for summary judgment, arguing that Defendant has not complied with the authentication requirements of Federal Rules of Civil Procedure Rule 56(e). Defendant has not fulfilled the authentication requirements of Rule 56(e), which would normally require attaching the deposition's cover page and the reporter's certification. *See Orr v. Bank of America,* 285 F.3d 764, 774 (9th Cir.2002). However, because Plaintiff has not attacked the content of these depositions and apparently produced the same transcripts to Defendant, the court will nonetheless consider them under the assumption that if they were somehow inaccurate, Plaintiff would have brought any discrepancies to the court's attention. Still, the court warns counsel for Defendant that failure to comply with the authentication requirements of 56(e) can result in this court not considering the proffered documents.

### D. Defendant's Objections to Plaintiff Evidence

Defendant objects, on several grounds, to portions of Karl MacGibbon's deposition, a letter from Stephen Castranova to Ralph Rowland, and the handwritten notes in a letter to the State Contractor's Board. Because the court did not consider this evidence in deciding the present motions for summary judgment, the court will not rule on Defendant's objections at this time.

### E. Plaintiff Motion for Leave to Supplement

Plaintiff has also filed a motion to supplement its opposition to Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment. Because the new evidence presented by Plaintiff in its motion does not affect the court's disposition of Defendant's motion for summary judgment and Plaintiff's cross-motion for summary judgment, Plaintiff's motion for leave to supplement is denied as moot.

## IV. Conclusion

Defendant has failed to show that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. Plaintiff, however, has succeeded in showing it is entitled to partial summary judgment on multiple issues. Accordingly, pursuant its authority under Federal Rules of Procedure Rule 56(d), the court finds that the following facts are not genuinely at issue and are therefore established in this action: (1) Brunson and McCaffrey are insureds of Defendant with respect to their conduct in constructing Skender and Dziurda's home, (2) the policies' exclusion for conduct of a partnership does not exclude coverage for the LLC in constructing Skender and Dziurda's home, and (3) Defendant has a duty to defend the LLC with regard to the allegations in the

third-party complaint that constitute "property damage" under Defendant's policies, (4) Defendant has a duty to defend against the alleged damage caused by the home's roof leaks, (5) Defendant has a duty to defend against the alleged damage caused by the home's doors blowing in, and (6) Defendant is liable for a portion of the expenses Plaintiff incurred in defending the *Skender* action.

IT IS THEREFORE ORDERED that Defendant North American Specialty Insurance's Motion for Summary Judgment (# 16) is DENIED.

IT IS FURTHER ORDERED that Plaintiff Great American Insurance Company's Cross–Motion for Summary Judgment (# 17) is GRANTED in part as explained above.

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Supplement (1) Plaintiff's Opposition to Defendant's Motion for Summary Judgment and (2) Plaintiff's Cross–Motion for Summary Judgment (# 47) is DENIED as moot.

IT IS FURTHER ORDERED that the parties shall lodge their proposed joint pretrial order within thirty (30) days from entry of this Order. *See* Local Rules 16–4 and 26–1(e)(5).

IT IS SO ORDERED.