**FARMERS INSURANCE EXCHANGE, a California business, Plaintiff,**

v.

**Michael LAWLESS, an individual, Defendant.**

**Case No. 2:09–cv–00194–RLH–LRL.**

United States District Court, D. Nevada.

Jan. 7, 2010.

James E. Murphy, Lon A. Burke, Laxalt & Nomura, Ltd., Las Vegas, NV, for Plaintiff.

Eric A. Daly, Law Office of Eric A. Daly, LLC, Las Vegas, NV, for Defendant.

## ORDER

(Motion for Summary Judgment—# 14; Cross–Motion for Summary Judgment—# 16)

ROGER L. HUNT, Chief Judge.

Before the Court is Plaintiff Farmers Insurance's **Motion for Summary Judgment** (# 14), filed August 13, 2009. The Court has also considered Defendant Mi-chael Lawless' Opposition (# 15), filed August 24, 2009, and Plaintiff's Reply (# 17), filed September 8, 2009.

Also before the Court is Lawless' **Counter Motion for Summary Judgment** (# 16), filed August 24, 2009. The Court has also considered Plaintiff's Opposition (# 17), filed September 8, 2009, and Lawless' Reply (# 18), filed September 10, 2009.

## BACKGROUND

This case arises out of an insurance coverage dispute. Daniel Mumau, who is not a party to this action, procured insurance coverage through Farmers for three vehicles he owned: a Dodge Caravan, a Chevrolet pick-up truck, and a Hyundai Santa Fe. Mumau purchased three insurance policies—one for each vehicle—from Gary Orchard Insurance Agency ("Orchard"), an insurance agent for Farmers. Each policy included $50,000 per person uninsured/underinsured motorist ("UIM") coverage. Mamau paid a unique premium on each policy for UIM coverage: $78.60 for the Hyundai (Dkt. # 14; Mot. Ex. 1, Hyundai Policy No. 67 17696–27–43 Declarations, POLICY0003), $66.70 for the Dodge (*Id.* Ex. 2, Dodge Policy No. 67 17696–26–81 Declarations, POLICY0034), and $12.70 for the Chevy. (*Id.* Ex. 3, Chevy Policy No. 67 17696–27–72 Declarations, POLICY0068).

Mumau is the named insured on all three policies. The policies define "insured person" for the purposes of UIM coverage as follows:

a. You or a **family member.**

b. Any other person while **occupying** the car described in the Declarations, an **additional car, a replacement car,** or a **substitute car.**

c. Any person for **damages** that person is entitled to recover because of **bodily**

**injury** to an **insured person** as described in a, and b, above.

(*Id.* Ex. 1, POLICY0011; Ex. 2, POLICY0043; Ex. 3, POLICY0077 (emphasis in originals).) While Lawless is not covered as a named insured on any of the policies, he is listed on the Hyundai policy as a "rated driver." (Dkt. # 1, Pl.'s Compl. Ex. C, Mem. of Auto. Ins., Sept. 25, 2007.) In July 2008, Lawless inquired about his coverage and Orchard replied in writing indicating that he was insured for "any vehicle garaged at your home address as if that vehicle were your own." (Dkt. # 14, Mot. Ex. 10, Orchard correspondence, July 10, 2008; *see also* Dkt. # 16, Counter Mot. Ex. A.)

On March 8, 2008, Lawless was injured in a car accident while driving Mumau's Hyundai Santa Fe. Hollis Stoa, the driver of the other vehicle involved in the accident, accepted responsibility for the accident, and her insurance company paid the coverage limit of $100,000. Lawless' attorney then contacted Farmers Insurance to request UIM coverage on each of the three insurance policies. Farmers paid Lawless the $50,000 UIM limit on the Hyundai policy in July 2008. Farmers told Lawless, however, that he was not entitled to UIM coverage on the Dodge or Chevrolet policies because he was not the insured or a rated driver on those policies. (Dkt. # 14, Mot. Ex. 7, Farmers Explanation of Coverage letter, dated June 27, 2008.) In addition, Farmers explained that Lawless was not entitled to stack UIM coverage on the Dodge or Chevrolet policies because each policy contained a non-stacking clause, which explained that Farmers was only obligated to pay UIM claims on the vehicle involved in the accident. (*Id.* (referring to Farmers' Anti-Stacking Clause); *see* Dkt. # 14; Mot. Ex. 1, POLICY0013; Ex. 2, POLICY0045; Ex. 3, POLICY0079.) The relevant anti-stacking provisions read as follows:

"LIMITATIONS ON STACKING COVERAGES IF YOU HAVE MORE THAN ONE CAR INSURED BY US, WE WILL NOT PAY ANY INSURED PERSON MORE THAN THE SINGLE HIGHEST LIMIT OF UNINSURED MOTORIST COVERAGE WHICH YOU HAVE ON ANY ONE OF THOSE CARS. THIS LIMIT OF COVERAGE APPLIES REGARDLESS OF THE NUMBER OF POLICIES, INSURED PERSONS, CARS INSURED, CLAIMS MADE, CLAIMANTS, OR VEHICLES INVOLVED IN THE OCCURRENCE. COVERAGE ON YOUR OTHER CARS INSURED WITH U.S. CANNOT BE ADDED, COMBINED OR STACKED TOGETHER."

*Id.* The anti-stacking provisions are set apart from the other policy language by a prominent text box, capital letters, and italicized font.

On July 18, 2008, Lawless brought claims against Hollis Stoa in Nevada state court for negligence and negligence per se. On January 30, 2009, Farmers filed suit in this Court seeking a declaratory order regarding its obligation to provide additional UIM coverage to Lawless. On February 16, 2009, Lawless filed a Motion to Dismiss for Failure to Join an Indispensable Party (Dkt. # 6). This Court denied Lawless' Motion. (*See* Dkt. # 9, Order denying Motion to Dismiss, May 20, 2009.) Both Farmers and Lawless now move for summary judgment in their favor. For the reasons discussed below, the Court grants Farmers' Motion and denies Lawless' Motion.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits

show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party and a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of showing that there are no genuine issues of material fact. *Zoslaw v. MCA Distrib. Corp.,* 693 F.2d 870, 883 (9th Cir.1982). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.,* 210 F.3d 1099, 1102 (9th Cir.2000). Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.,* 929 F.2d 1404, 1409 (9th Cir.1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America,* 285 F.3d 764, 783 (9th Cir.2002) (internal citations omitted).

## II. Analysis

■ An insurance policy, like all contracts, must be enforced according to its terms to accomplish the intent of the parties. *Farmers Ins. Exch. v. Neal,* 119 Nev. 62, 64 P.3d 472, 473 (2003). In doing so, the Court views the policy language from the perspective of " 'one not trained in law' " and gives plain, ordinary, and popular meaning to the terms. *McDaniel v. Sierra Health & Life Ins. Co.,* 118 Nev. 596, 53 P.3d 904, 906 (2002) (quoting *Nat'l Union Fire Ins. v. Reno's Exec. Air,* 100 Nev. 360, 682 P.2d 1380, 1382 (1984)). Any ambiguity in an insurance contract must be interpreted against the drafting party and in favor of the insured. *Farmers Ins. Group v. Stonik,* 110 Nev. 64, 867 P.2d 389, 391 (1994). However, the Court will not rewrite a policy where the provisions are unambiguous. *McDaniel,* 53 P.3d at 906.

### A. Insured Persons

■ Lawless asserts that he is an insured person under all three Farmers policies because Orchard assured him that he was insured based on his cohabitation with Mumau. (Dkt. # 16, Counter Mot. ¶ 2.) The Court disagrees. First, Lawless did not meet Farmers' insured person definition of "you" for the purposes of UIM coverage. (*Id.* Ex. 1, POLICY0011; Ex. 2, POLICY0043; Ex. 3, POLICY0077.) The policies state, " 'you' and 'your' mean the 'named insured' shown in the Declarations, and a spouse if a resident of the same household." (*Id.* Ex. 1, POLICY0007; Ex. 2, POLICY0039; Ex. 3, POLICY0073.) Lawless was not listed as a named insured on the Hyundai, Dodge, or Chevy Declarations. (*Id.* Ex. 1, POLICY0003; Ex. 2, POLICY0034; Ex. 3, POLICY0068.) ·Sec-

ond, Lawless was not Mumau's family member, defined by Farmers as "a person related to [the insured] by blood, marriage or adoption who is a resident of your household." (*Id.* Ex. 1, POLICY0007; Ex. 2, POLICY0039; Ex. 3, POLICY0073.) Because he was not a named insured or a family member, Lawless needed to meet additional criteria in the insured person definition to receive UIM coverage.

Lawless qualified as an insured person for UIM coverage under subsection b. of the Hyundai policy, "[a]ny person while **occupying** the car described in the Declarations . . . ." (*Id.* Ex. 1, POLICY0011 (emphasis in original).) Because Lawless occupied the Hyundai during the accident, he met the UIM coverage definition of an insured person under that particular policy. Although the Dodge and Chevy policies contained identical definitions (*see id.* Ex. 2, POLICY0043; Ex. 3, POLICY0077), Lawless could not have physically occupied those vehicles during the accident. Consequently, Lawless did not meet the definition of an insured person under either subsection a. or b. of the Dodge or Chevy policies. Thus, based on Farmers' unambiguous policy provisions, Lawless was an insured person only under the Hyundai policy.

Lawless claims Mumau requested that Orchard structure his Farmers policies with Lawless as a named insured. However, Lawless did not submit any evidence to support this argument. After the accident, Orchard told Lawless he was insured for "any vehicle garaged at your home address as if that vehicle were your own." (Dkt. # 14, Mot. Ex. 10, Orchard correspondence, July 10, 2008; *see also* Dkt. # 16, Counter Mot. Ex. A.) Lawless argues that Orchard's representation of insured status gave him the reasonable belief that he was entitled to coverage on all three policies. However, Lawless' name was not listed next to Mumau's as a named insured

on any of the policies' declarations. The Court must assume Mumau read the policies and declarations and reported any discrepancies to Orchard or Farmers. *Farmers Ins. Exch. v. Young*, 108 Nev. 328, 832 P.2d 376, 379 n. 2 (1992) ("We must assume that the insured party has at least read the policy and given a plain common-sense meaning to the policy's provisions.") Farmers' UIM policy language is clear and unambiguous, thus, the Court cannot go beyond the policy language to consider the "intent of the parties, subject matter of the policy, [and] the circumstances surrounding issuance." *Young*, 832 P.2d at 379 n. 3 (quoting *Nat'l Union Fire Ins. v. Caesars Palace*, 106 Nev. 330, 792 P.2d 1129, 1130 (1990)).

Furthermore, nowhere in Orchard's correspondence did it refer to Lawless as a named insured. Instead, both Farmers and Orchard consistently referred to him as a rated driver both before and after the incident. (Dkt. # 1, Pl.'s Compl. Ex. C, Mem. of Auto. Ins., Sept. 25, 2007; Dkt. # 14, Mot. Ex. 7, Farmers Explanation of Coverage letter, June 27, 2008.) Therefore, the Court finds no genuine issue of material fact exists regarding whether Lawless was an insured person under the UIM provisions of the Dodge and Chevy policies. The Court concludes that for the purposes of UIM coverage, Lawless was an insured person only on the Hyundai policy.

## B. Stacking UIM Coverage

■ Lawless also argues that Farmers erroneously concluded that its anti-stacking clause applies to his accident. Although the Court has determined that Lawless was not an insured person under the Dodge and Chevy policies, even if Lawless was an insured person on those two policies, the anti-stacking clause would

have prevented him from receiving multiple UIM benefits.

Generally, an insured has a reasonable expectation that she will receive additional UIM benefits for each separate UIM premium paid. *Torres v. Farmers Ins. Exch.*, 106 Nev. 340, 793 P.2d 839, 842 (1990). However, NRS 687B.145(1) permits insurers to limit stacking of UIM coverages and provides that any such limiting provision: "must be in clear language and be prominently displayed in the policy.... Any limiting provision is void if the named insured has purchased separate coverage on the same risk and has paid a premium calculated for full reimbursement under that coverage." The Nevada Supreme Court interprets NRS 687B.145(1) to impose three requirements upon insurers with respect to anti-stacking clauses: (1) clarity; (2) prominence; and (3) the insured cannot "have purchased separate coverage on the same risk nor paid a premium calculated for full reimbursement under that coverage." *Bove v. Prudential Ins. Co. of Am.*, 106 Nev. 682, 799 P.2d 1108, 1110 (1990). Thus, Farmers can defeat Lawless' reasonable expectation by proving that its anti-stacking clause conforms to NRS 687B.145(1). *See Torres*, 793 P.2d at 842–43.

Farmers' anti-stacking clause used in the three policies at issue conforms to the requirements of NRS 687B.145(1). (*See* Dkt. # 14; Mot. Ex. 1, POLICY0013; Ex. 2, POLICY0045; Ex. 3, POLICY0079.) The first prong is met because the anti-stacking clause is clear—it is neither ambiguous or difficult to understand. The clause uses concise English and simple terms that avoid legal jargon. *Torres*, 793 P.2d at 843 (requiring anti-stacking clauses to be "truly comprehensible to the average insured"). The second prong is met because the clause directs the reader's attention towards the critical language and has greater prominence than the rest of the policy language. *Bove*, 799 P.2d at 1111 (citing *Neumann v. Standard Fire Ins.*, 101 Nev. 206, 699 P.2d 101, 105 (1985)). Farmers' anti-stacking clauses are set apart from the other policy language by a prominent text box, capital letters, and italicized font—facts that easily satisfy the prominence requirement. Finally, the third prong is met because Farmers charged Mumau separate UIM premiums for each policy. The policies' declarations show Mumau paid $78.60 for the Hyundai (Dkt. # 14, Mot. Ex. 1, POLICY0003), $66.70 for the Dodge (*Id.* Ex. 2, POLICY0034), and $12.70 for the Chevy. (*Id.* Ex. 3, POLICY0068). Farmers calculated different UIM premium amounts for each vehicle because each was a separate and unique risk. Thus, Farmers' anti-stacking clauses satisfy the requirements of NRS 687B.145(1) and preclude Lawless from receiving UIM benefits from the Dodge and Chevy policies.

Accordingly, the Court finds that Farmers has demonstrated that no genuine issue of material fact exists regarding whether the policies' anti-stacking clause is valid and it is entitled to judgment as a matter of law. Farmers' anti-stacking clause prevents Lawless from collecting benefits on more than one UIM policy. Lawless was an insured person only under the Hyundai policy; thus, Farmers correctly remitted the $50,000 UIM policy limits.

## CONCLUSION

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Plaintiff Farmers Insurance's Motion for Summary Judgment (# 14) is GRANTED.

IT IS FURTHER ORDERED that Defendant Michael Lawless' Counter Motion for Summary Judgment (# 16) is DENIED.

The Clerk of the Court is instructed to close this case.