**130 Nev., Advance Opinion 40**
IN THE SUPREME COURT OF THE STATE OF NEVADA

VIEGA GMBH; AND VIEGA
INTERNATIONAL GMBH,
Petitioners,
vs.
THE EIGHTH JUDICIAL DISTRICT
COURT OF THE STATE OF NEVADA,
IN AND FOR THE COUNTY OF
CLARK; AND THE HONORABLE
SUSAN JOHNSON, DISTRICT JUDGE,
Respondents,
and
AVENTINE-TRAMONTI
HOMEOWNERS' ASSOCIATION,
Real Party in Interest.

No. 59976

**FILED**

MAY 29 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Original petition for a writ of prohibition challenging a district court order denying motions to dismiss for lack of personal jurisdiction.

*Petition granted.*

Fennemore Craig, P.C., and John H. Mowbray, Janice Proctor-Murphy, and Kevin M. Green, Las Vegas; Lincoln, Gustafson & Cercos and Nicholas B. Salerno and Christopher A. Turtzo, Las Vegas; Carroll Burdick & McDonough and Matthew J. Kemner, San Francisco, California,
for Petitioners.

Canepa Reidy & Rubino and Scott K. Canepa and Terry W. Reidy, Las Vegas; Carraway & Associates, LLC, and James D. Carraway, Las Vegas; Kemp, Jones & Coulthard, LLP, and J. Randall Jones, Las Vegas; Lynch, Hopper & Salzano LLP and Francis I. Lynch, Las Vegas; Maddox, Isaacson & Cisneros and Robert C. Maddox, Las Vegas,
for Real Parties in Interest.

BEFORE THE COURT EN BANC.[1]

## OPINION

By the Court, HARDESTY, J.:

In this original petition for a writ of prohibition, two foreign companies challenge the Nevada district court's assertion of personal jurisdiction over them. The district court asserted jurisdiction after determining that the foreign companies' American subsidiaries acted as their agents and then attributing to them the subsidiaries' Nevada contacts. The foreign companies argue that, in so doing, the district court violated due process.

We agree. Although a Nevada plaintiff may establish personal jurisdiction over nonresident parent companies by showing that their subsidiaries acted in the forum as the parents' agents, so that the subsidiaries' local contacts can be imputed to the parents, no agency relationship was shown here. Accordingly, in imputing the subsidiaries' contacts to the foreign parents here, the district court exceeded its jurisdiction, warranting writ relief.

## FACTS AND PROCEDURAL HISTORY

Petitioners Viega GmbH and Viega International GmbH are German limited liability corporations. Viega GmbH designs and manufactures plumbing and heating components in Germany. Viega GmbH wholly owns Viega International, a holding company for Viega

---

[1]Following oral argument before a three-judge panel, this matter was transferred to the en banc court pursuant to IOP Rule 13(b). The Honorable Ron D. Parraguirre, Justice, voluntarily recused himself from participation in the decision of this matter.

GmbH's international subsidiaries. In turn, Viega International wholly owns Viega Inc., a holding company incorporated in Delaware. Viega Inc. owned Viega NA, Inc., which sold Viega GmbH's plumbing products in the United States.

In October 2005, Viega Inc. purchased Vanguard, LLC, a Kansas-based yellow brass plumbing parts manufacturer and distributer. As part of the purchase, Viega Inc. assumed Vanguard's liabilities. In 2007, Viega Inc. then formed Viega LLC, a Delaware limited liability company headquartered in Kansas, to integrate Viega NA and Vanguard, along with a third company, into one entity. Viega LLC owns a distribution center in Reno and regularly conducts business in this state. According to real party in interest, Viega Inc. and Viega LLC are the sole means by which Viega GmbH and Viega International conduct any activities in, and by which Viega products enter, the American plumbing market. For purposes of this case, the parties do not dispute that Viega Inc. and Viega LLC are subject to personal jurisdiction in Nevada.

Prior to Viega Inc.'s 2005 purchase of Vanguard and assumption of its liabilities, Vanguard's yellow brass plumbing parts were distributed and installed in the Aventine-Tramonti common interest community in Las Vegas, Nevada. Asserting that the plumbing parts were defective, in 2008, real party in interest, the Aventine-Tramonti Homeowners' Association, filed a construction defect complaint that named, among others, Vanguard, Viega Inc., and Viega LLC as being responsible for the production, distribution, and sale of the allegedly faulty plumbing parts.

The HOA later amended its complaint to add Viega GmbH and Viega International as defendants. Both German companies moved to

dismiss the complaints, arguing that the district court lacked personal jurisdiction over them because neither company had a direct connection to Nevada, manufactured or distributed the allegedly faulty plumbing parts, or had responsibility or control over the American subsidiaries such that the subsidiaries' contacts with Nevada could be imputed to the German companies.

The district court held a nonevidentiary hearing on the motions, after which the court concluded that the HOA had made a prima facie showing of general and specific personal jurisdiction and thus denied the German companies' motions to dismiss. In determining whether the German companies' contacts with Nevada were sufficient to support the exercise of jurisdiction over them, the district court considered (1) whether the German companies exercised "pervasive and continual" control over Viega Inc. and whether Viega Inc. was sufficiently important to the German Viega companies such that they would undertake Viega Inc.'s activities if it did not exist. The district court found that the HOA had demonstrated that, although Viega GmbH, Viega International, and Viega Inc. were separately created entities, they essentially acted as one company. As a result, the court concluded, Viega Inc.'s contacts with Nevada could be imputed to Viega GmbH and Viega International. Based on those contacts, the district court held that both Viega GmbH and Viega International were subject to personal jurisdiction in Nevada. This writ petition followed.[2] Because the parties largely refer to Viega Inc. and

---

[2]Although we have considered the supplemental memorandum and responses thereto requested by this court, we deny the Viega GmbH and Viega International's January 22, 2014, motion to supplement the record on appeal and request for additional supplemental briefing.

Viega LLC as "American Viega" and to Viega International and Viega GmbH as "German Viega" and do not assert that they should be viewed differently, we do likewise.

## DISCUSSION

A writ of prohibition is available to arrest or remedy district court actions taken without or in excess of jurisdiction. NRS 34.320; *State, Office of the Attorney Gen. v. Eighth Judicial Dist. Court (Anzalone)*, 118 Nev. 140, 146-47, 42 P.3d 233, 237 (2002). Writ relief is an extraordinary remedy that this court will only "exercise [its] discretion to consider . . . when there is no plain, speedy and adequate remedy in the ordinary course of law." *Cheung v. Eighth Judicial Dist. Court*, 121 Nev. 867, 869, 124 P.3d 550, 552 (2005) (internal quotations marks omitted); NRS 34.330. As no adequate and speedy legal remedy typically exists to correct an invalid exercise of personal jurisdiction, a writ of prohibition is an appropriate method for challenging district court orders when it is alleged that the district court has exceeded its jurisdiction. *South Fork Band, Te-Moak Tribe v. Sixth Judicial Dist. Court*, 116 Nev. 805, 811, 7 P.3d 455, 459 (2000). Because Viega GmbH and Viega International challenge the validity of the district court's exercise of jurisdiction over them, we exercise our discretion to consider this writ petition.

*Establishing personal jurisdiction over a nonresident parent company*

To avoid dismissal of the German Viega companies at this stage of the proceedings below, the HOA was required to make a prima facie showing with "competent evidence of essential facts" that, if true, would support jurisdiction. *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 692, 857 P.2d 740, 743 (1993) (internal quotation marks omitted). "The court may consider evidence presented in affidavits to

assist it in its determination," *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), and the court must accept properly supported proffers of evidence as true. *Trump*, 109 Nev. at 692, 857 P.2d at 743. When factual disputes arise, "those disputes must be resolved in favor of the plaintiff." *Id.* at 693, 857 P.2d at 744 (internal quotation marks omitted). Once a prima facie showing is made, the plaintiff then bears the burden at trial to prove jurisdiction by a preponderance of evidence. *Trump*, 109 Nev. at 693, 857 P.2d at 744. As a question of law, the district court's determination of personal jurisdiction is reviewed de novo, even in the context of a writ petition. *Hosp. Corp. of Am. v. Second Judicial Dist. Court*, 112 Nev. 1159, 1160, 924 P.2d 725, 725 (1996).

Jurisdiction over a nonresident defendant is proper only if the plaintiff shows that the exercise of jurisdiction satisfies the requirements of Nevada's long-arm statute and does not offend principles of due process. *Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court*, 122 Nev. 509, 512, 134 P.3d 710, 712 (2006); *see also Consipio Holding, BV v. Carlberg*, 128 Nev. ___, ___, 282 P.3d 751, 754 (2012) ("Nevada's long-arm statute permits personal jurisdiction over a nonresident defendant unless the exercise of jurisdiction would violate due process."). Nevada's long-arm statute, NRS 14.065, reaches the constitutional limits of due process under the Fourteenth Amendment, which requires that the defendant have such minimum contacts with the state that the defendant could reasonably anticipate being haled into court here, thereby complying with "traditional notions of fair play and substantial justice." *Arbella*, 122 Nev. at 512, 134 P.3d at 712 (internal quotation marks omitted) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Accordingly, we must look to

whether the exercise of jurisdiction over Viega GmbH and Viega International comports with due process.

Due process requirements are satisfied if the nonresident defendants' contacts are sufficient to obtain either (1) general jurisdiction, or (2) specific personal jurisdiction and it is reasonable to subject the nonresident defendants to suit here. *Arbella*, 122 Nev. at 512, 516, 134 P.3d at 712, 714; *see Daimler AG v. Bauman*, 571 U.S. ___, ___ n.20, 134 S. Ct. 746, 762 n.20 (2014). A court may exercise general jurisdiction over a foreign company when its contacts with the forum state are so "'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)); *see also Arbella*, 122 Nev. at 513, 134 P.3d at 712 ("[G]eneral personal jurisdiction exists when the defendant's forum state activities are so substantial or continuous and systematic that it is considered present in that forum and thus subject to suit there, even though the suit's claims are unrelated to that forum." (internal quotations marks omitted)). Specific personal jurisdiction arises when the defendant purposefully enters the forum's market or establishes contacts in the forum and affirmatively directs conduct there, and the claims arise from that purposeful contact or conduct. *Arbella*, 122 Nev. at 513, 134 P.3d at 712-13.

The parties agree that neither Viega GmbH nor Viega International directly engages in business in Nevada. Rather, the HOA attempts to establish both general and specific personal jurisdiction over these companies based on the Nevada contacts of their American

subsidiaries, which concededly are subject to the jurisdiction of the Nevada court for resolution of this matter.

But corporate entities are presumed separate, and thus, the mere "existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiaries' minimum contacts with the forum." *Doe v. Unocal Corp.*, 248 F.3d 915, 925 (9th Cir. 2001); *see also McCulloch Corp. v. O'Donnell*, 83 Nev. 396, 399, 433 P.2d 839, 840-41 (1967) (holding that "[t]he mere fact of stock ownership by one corporation in another does not authorize jurisdiction over the stockholder corporation"). Subsidiaries' contacts have been imputed to parent companies only under narrow exceptions to this general rule, including "alter ego" theory and, at least in cases of specific jurisdiction, the "agency" theory. *Unocal Corp.*, 248 F.3d at 926. The alter ego theory allows plaintiffs to pierce the corporate veil to impute a subsidiary's contacts to the parent company by showing that the subsidiary and the parent are one and the same. *See, e.g., Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2857 (implying, but not deciding, that an alter ego theory would be appropriate in such a situation); *see also Platten v. HG Bermuda Exempted, Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 (5th Cir. 2002). The rationale behind this theory is that the alter ego subsidiary is the same entity as its parent, and thus, the jurisdictional contacts of the subsidiary are also jurisdictional contacts of the parent. *Patin*, 294 F.3d at 653. Unlike with the alter ego theory, the corporate identity of the parent company is preserved under the agency theory; the parent nevertheless "is held for the acts of the [subsidiary] agent" because the subsidiary was acting on the parent's behalf. *F. Hoffman-La Roche, Ltd. v. Superior*

*Court*, 30 Cal. Rptr. 3d 407, 418 (Ct. App. 2005) (internal quotations marks omitted); *Wesley–Jessen Corp. v. Pilkington Visioncare, Inc.*, 863 F. Supp. 186, 188-89 (D. Del. 1993) ("This [agency] theory does not treat the parent and subsidiary as one entity, but rather attributes specific acts to the parent because of the parent's authorization of those acts.").

Here, the German Viega companies assert that they neither are alter egos of their subsidiaries nor have an agency relationship with them to support the district court's attribution of contacts. The HOA, however, asserts that the American subsidiaries serve as the German Viega companies' agents and, thus, that the subsidiaries' Nevada contacts can be used to support the district court's findings of both general and specific jurisdiction.

*Agency and general jurisdiction*

As noted, general jurisdiction over a defendant allows a plaintiff to assert claims against that defendant unrelated to the forum. Such broad jurisdiction is available only in limited circumstances, however. "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2851. Typically, a corporation is "at home" only where it is incorporated or has its principal place of business. *See Daimler AG*, 571 U.S. at ___ & ___ n.19, 134 S. Ct. at 760 & 761 n.19 (discussing *Goodyear*, 564 U.S. at ___, 131 S. Ct. at 2853-54). In *Daimler AG v. Bauman*, the United States Supreme Court concluded that a foreign parent corporation was not amenable to general jurisdiction in California as the principal of its subsidiary when neither it nor the

Supreme Court
of
Nevada

(O) 1947A

9

subsidiary was incorporated in or had its principal place of business in California, even though the subsidiary conducted substantial business there. 571 U.S. at ___, 134 S. Ct. at 761-62.

This case is no different. The HOA has not alleged that either German Viega or American Viega are incorporated in or hold their principal places of business in Nevada. Nor has it asserted any other circumstances by which to show that German Viega, even with contacts imputed from American Viega, has formed a relationship with Nevada that is so continuous and systematic as to be considered at home in this state. Thus, even if the American Viega companies exist solely to serve at the direction of their foreign parent and therefore can be considered agents of German Viega, general jurisdiction cannot lie.

*Agency and specific jurisdiction*

With regard to specific jurisdiction, we have previously recognized that a plaintiff may establish personal jurisdiction over a nonresident defendant "by attributing the contacts of the defendant's agent with the forum to the defendant." *Trump v. Eighth Judicial Dist. Court*, 109 Nev. 687, 694, 857 P.2d 740, 745 (1993); *see In re Amerco Derivative Litig.*, 252 P.3d 681, 695 (2011) ("Under basic corporate agency law, the actions of corporate agents are imputed to the corporation."). And in *Hospital Corp. of America v. Second Judicial District Court*, we summarily extended this concept to the subsidiary-parent relationship, recognizing that a prima facie showing of personal jurisdiction over foreign parent corporations can be established by evidence demonstrating "agency or control" by the parent corporations over their local subsidiaries. 112 Nev. 1159, 1161, 924 P.2d 725, 726 (1996); *see also Daimler AG*, 571 U.S. at ___ n.13, 134 S. Ct. at 759 n.13 (indicating that an agency relationship

may be used to establish specific jurisdiction and noting that "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there"); *C.R. Bard, Inc. v. Guidant Corp.*, 997 F. Supp. 556, 560 (D. Del. 1998) ("Under the agency theory, the court may attribute the actions of a subsidiary company to its parent where the subsidiary acts on the parent's behalf or at the parent's direction.").

Generally, an agency relationship is formed when one person has the right to control the performance of another. *Trump*, 109 Nev. at 695 n.3, 857 P.2d at 745 n.3; Restatement (Second) of Agency § 14 (1958) (providing that an agency relationship exists when the principal possesses the right to control the agent's conduct). In the corporate context, however, the relationship between a parent company and its wholly owned subsidiary necessarily includes some elements of control. *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824, 838 (Ct. App. 2000) ("The relationship of owner to owned contemplates a close financial connection between parent and subsidiary and a certain degree of direction and management exercised by the former over the latter."). Corporate entities are presumed separate, and thus, indicia of mere ownership are not alone sufficient to subject a parent company to jurisdiction based on its subsidiary's contacts. *F. Hoffman-La Roche, Ltd. v. Superior Court*, 30 Cal. Rptr. 3d 407, 418 (Ct. App. 2005); *Sonora*, 99 Cal. Rptr. 2d at 838 ("We start with the firm proposition that neither ownership nor control of a subsidiary corporation by a foreign parent corporation, without more, subjects the parent to the jurisdiction of the state where the subsidiary does business." (citing *Cannon Mfg. Co. v.*

*Cudahy Packing Co.*, 267 U.S. 333, 336 (1925)));[3] *see MGM Grand, Inc. v. Eighth Judicial Dist. Court*, 107 Nev. 65, 68-69, 807 P.2d 201, 203 (1991) (holding that Walt Disney Company's Nevada subsidiaries' contacts could not be imputed to Disney because it "exercise[d] no more control over its [Nevada] subsidiaries than [wa]s appropriate for a sole shareholder of a corporation"); Restatement (Second) of Agency § 14M (1958) (discussing when a subsidiary can be considered an agent of its parent corporation).

Further, as pointed out by the Supreme Court, agencies can vary widely in scope and purpose. *Daimler AG*, 571 U.S. at ___, 134 S. Ct. at 759 ("Agencies, we note, come in many sizes and shapes: 'One may be an agent for some business purposes and not others so that the fact that one may be an agent for one purpose does not make him or her an agent for every purpose.'" (quoting 2A C.J.S. *Agency* § 43 (2013) (footnote omitted))). In this case, the HOA broadly asserts that the American subsidiaries serve as the German companies' agents for all purposes concerning their plumbing activities in America—in other words, that the subsidiaries' sole purpose is to establish German Viega's presence here.

When describing such a broad agency relationship between a parent company and its subsidiary, the control at issue must not only be of a degree "more pervasive than . . . common features" of ownership, "[i]t must veer into management by the exercise of control over the internal affairs of the subsidiary and the determination of how the company will be

---

[3]Although *Sonora* is based on the premise that agency in this context supports a finding of general jurisdiction, the Supreme Court has recognized that agency typically is more useful to a specific jurisdiction analysis. *Daimler AG*, 571 U.S. at ___ n.13, 134 S. Ct. at 759 n.13 (indicating that an agency relationship may be used to establish specific jurisdiction).

SUPREME COURT
OF
NEVADA

(O) 1947A

12

operated on a day-to-day basis," such that the parent has "moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's day-to-day operations in carrying out that policy." *F. Hoffman-La Roche*, 30 Cal. Rptr. 3d at 418-19; *Enic, PLC v. F.F. South & Co., Inc.*, 870 So. 2d 888, 891-92 (Fla. Dist. Ct. App. 2004) ("The amount of control exercised by the parent must be high and very significant. . . . The parent corporation, to be liable for its subsidiary's acts under the . . . agency theory, must exercise control to the extent the subsidiary manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." (internal quotations marks and citations omitted)); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) ("The factors relevant to this determination include the extent of overlap of officers and directors, methods of financing, the division of responsibility for day-to-day management, and the process by which each corporation obtains its business."); *see generally Hunter Min. Laboratories, Inc. v. Mgmt. Assistance, Inc.*, 104 Nev. 568, 571, 763 P.2d 350, 352 (1988) ("Only when a manufacturer controls the day to day or operative details of the dealer's business is an agency potentially created."). This may be the case in instances "where the local entity as agent essentially exists only to further the business of the foreign entity, and but for the domestic entity's existence, the foreign entity would be performing those functions in the forum itself." *F. Hoffman-La Roche*, 30 Cal. Rptr. 3d at 419 (citing *Sonora Diamond Corp. v. Superior Court*, 99 Cal. Rptr. 2d 824 (Ct. App. 2000)). "The doctrine supports jurisdiction 'when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business.'" *Id.* (quoting *Sonora*, 99 Cal. Rptr. 2d 824).

SUPREME COURT
OF
NEVADA

(O) 1947A

13

> Thus, where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities, jurisdiction over the parent may be grounded in the acts of the subsidiary/agent.

*Sonora*, 99 Cal. Rptr. 2d at 837-38. With these principles in mind, we turn to whether the HOA has established a prima facie showing of personal jurisdiction over Viega GmbH and Viega International under the agency theory.

*Assertion of personal jurisdiction over Viega GmbH and Viega International*

The parties do not dispute that Viega Inc.'s 2005 purchase of the Vanguard companies and assumption of liabilities subjects Viega Inc. to jurisdiction in Nevada in this litigation concerning Vanguard's installation of yellow brass plumbing fixtures in the Aventine-Tramonti Community homes. The HOA argues, in essence, that Viega Inc. purchased and assumed the liabilities of the Vanguard companies directly on behalf of Viega Germany, so as to further the German companies' activities in the United States in general, and in Nevada in particular. They assert that this agency relationship is shown both by the control that the German Viega entities exercise over the American companies and by the fact that the American companies exist as German Viega's sole basis for American marketing and operations. In other words, they contend that American Viega is merely a branch division of German Viega's plumbing operations as a whole and, as such, effectively purchased Vanguard and assumed its Nevada-based liabilities directly on behalf of the German companies.

To demonstrate this interdependence, the HOA points to various Viega websites, which refer to all of the Viega entities simply as "Viega," a unified global enterprise with operations in America, sharing the same corporate logo. The HOA notes that a German Viega board member serves on the American Viega boards of directors and that American Viega submits monthly reports to German Viega for review by a German management board. Through this structure, the HOA claims, German Viega controls the hiring of Viega Inc.'s executive officers, who must obtain approval from German Viega before entering into any large financial transactions. But these factors merely show the amount of control typical in a parent-subsidiary relationship and thus are insufficient to demonstrate agency. *See F. Hoffman-La Roche*, 30 Cal. Rptr. 3d at 418 (noting that control by means of interlocking directors and officers, consolidated reporting, and shared professional services is normal); *Sonora*, 99 Cal. Rptr. 2d at 845 (explaining that monitoring a subsidiary's performance, supervising the subsidiary's budget decisions, and setting general policies and procedures are typical of the parent-subsidiary relationship); *Round Rock Research L.L.C. v. ASUSTeK Computer Inc.*, No. 11-978-RGA, 2013 WL 4478231, at *1 (D. Del. August 20, 2013) (concluding that personal jurisdiction based on agency was not demonstrated through evidence of overlapping directors and other facts reflecting the parent-subsidiary relationship, even though the two companies shared the same goals, when there was no showing of oversight of day-to-day activities or that the parent authorized the sales at issue in the case).

While the HOA also points out that Viega Inc. is a holding company with no working structure, such that its executive operations and

business is conducted through Viega LLC, the HOA has not asserted that Viega Inc. has no assets or made any connection between its lack of corporate structure to German Viega's above-normal control. And even if, as the HOA asserts, American Viega is German Viega's agent for American operations and the face of American marketing, the HOA has not shown that that particular agency has resulted in the basis for the claims at issue here—the Vanguard plumbing products or the purchase of Vanguard and assumption of its liabilities. The fact that German Viega created American subsidies to conduct business in Nevada does not itself demonstrate agency. *Sonora*, 99 Cal. Rptr. 2d at 544-45 ("However, we have already pointed out that a parent corporation's formation and ownership of an independent subsidiary for the purpose of conducting business in the forum state does not itself subject the parent to jurisdiction in that state."). Further, sending representatives to attend meetings and a grand opening in Kansas does not show that Viega Germany is managing the day-to-day activities of the American Viega activities in Nevada. Although both American Viega and German Viega are engaged in the plumbing business, the subsidiaries have their own production and distribution facility in Kansas, and German Viega has claimed that it does not sell the type of plumbing fixtures at issue here.

This is not enough to show that, through the American Viega subsidiaries, Viega Germany purposefully availed itself of the privileges of doing business in Nevada, much less that it did so when Viega Inc. assumed the liabilities of Vanguard.[4] *See Daimler AG*, 571 U.S. at ___

___

[4]The concurring justices assert that our discussion avoids the question that must be asked in determining specific jurisdiction—whether German Viega's activities in Nevada led to the claims at issue here—and

*continued on next page...*

n.13, 134 S. Ct. at 759 n.13 (indicating that an agency relationship may be used to establish specific jurisdiction when a corporate entity purposefully directs its agent to engage in activities in the forum). While the HOA insists that these facts are sufficient at least to allow it to proceed with jurisdictional discovery for the purpose of obtaining evidence to prove personal jurisdiction over the German Viega entities, it has shown no more than a typical parent-subsidiary relationship, the separateness of which is a basic premise of corporate law. As the Second Circuit Court of Appeals has recognized, such problems in overcoming the presumption of separateness are inherent in attempting to sue a foreign corporation that is part of a carefully structured corporate family, and courts may not create exceptions to get around them:

---

*...continued*
ignores the simple answer that they did not, instead focusing on whether an agency relationship *currently* exists. But while the HOA focused "almost" solely on general jurisdiction, it also raised—and analyzed—the issue of specific jurisdiction, arguing that the German Viega's relationship with its subsidiaries demonstrated an overall intent to purposefully avail itself in Nevada, before and after the purchase of Vanguard, through its subsidiary agents, *including* with their purchase of Vanguard and assumption of its liabilities on German Viega's behalf. It is true we did not directly reach the question the concurring justices ask, although we noted that no such connection between the alleged agency and the claims was made. *Supra* at 15. This is because in responding to the HOA's argument, we concluded that, regardless, it had not shown an agency relationship at all. We do not answer questions rendered moot by the decision first reached, and thus our discussion of that decision does not lead to the conclusion that any proven, broad agency relationship necessarily results in specific jurisdiction. As stated earlier in this opinion, *supra* at 7 & 10, an agency relationship *might* be used to establish contacts sufficient for specific jurisdiction, so long as the contacts as an agent led to the claims at hand.

> We recognize that without discovery it may be extremely difficult for plaintiffs ... to make a prima facie showing of jurisdiction over a foreign corporation. ... [But] [t]he rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards.

*Jazini v. Nissan Motor Co.*, Ltd., 148 F.3d 181, 186 (2d Cir. 1998). Accordingly, for the reasons set forth above, we grant the petition and direct the clerk of the court to issue a writ of prohibition precluding the district court from allowing the case to proceed against the German Viega companies.[5]

_____, J.
Hardesty

We concur:

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

---

[5]In light of this opinion, we vacate our June 13, 2012, order staying the district court proceedings pertaining to Viega GmbH and Viega International.

PICKERING, J., with whom GIBBONS, C.J., agrees, concurring in the result only:

I agree that Viega GmbH and Viega International did not submit to personal jurisdiction in Nevada when they acquired a subsidiary whose pre-acquisition activities had given rise to claims against it in Nevada. I write separately because I would resolve this case on the basis that the foreign defendants' "contact" (the acquisition of a subsidiary that committed a tort in Nevada) did not give rise to the claim asserted against them (the tort committed by the acquired company), thus defeating specific jurisdiction. The Ninth Circuit's "agency" test, on which the majority relies, has been discredited as a basis for general jurisdiction and, as formulated, does not create specific jurisdiction either.

"'A court may assert general [personal] jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.'" *Daimler AG v. Bauman (Bauman II)*, 571 U.S. ___, ___, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011)). If such "continuous and systematic" affiliations do not exist, the defendant corporations must have "'purposefully directed' [their] activities at residents of the forum, *and the litigation* [must] result[ ] *from alleged injuries that 'arise out of or relate to' those activities*" so that the court may exercise specific personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citation omitted) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984) (emphasis added); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Viega

GmbH's and Viega International's only affiliations with and activities in Nevada were accomplished through their second- and third-tier subsidiary, Vanguard, so a Nevada court may only exercise personal jurisdiction over the German corporations if Vanguard's conduct in Nevada can properly be imputed to them for general or specific personal jurisdiction purposes.

Under the principle of corporate separateness, the actions of a subsidiary company are generally not attributable to its parent corporation. *See Dole Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003). But this principle may yield where a subsidiary is so dominated by its parent that the two corporations are, as a practical matter, the same entity or "alter egos," and recognizing their corporate separateness would sanction fraud or promote injustice. *See, e.g., Publicker Indus., Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979); *Polaris Indus. Corp. v. Kaplan*, 103 Nev. 598, 601, 747 P.2d 884, 886 (1987). By extension, jurisdiction over a parent corporation can be established on an alter ego theory where there is such unity of interest and ownership that in reality no separate entities exist and failure to disregard the separate identities would result in fraud or injustice. *Am. Tel. & Tel. Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 591 (9th Cir. 1996). But an alter ego theory does not apply here, because the HOA does not allege that Vanguard is Viega GmbH's and Viega International's alter ego, and the HOA conceded at argument that the Viega defendants did not loot or damage Vanguard's solvency when they acquired it through an American subsidiary. *See Polaris*, 103 Nev. at 601, 747 P.2d at 886.

Although neither alter ego nor successor liability is alleged or established, the majority resorts to the more controversial "agency" test as

formulated by the Ninth Circuit in *Bauman v. DaimlerChrysler Corporation* (*Bauman I*), 644 F.3d 909 (9th Cir. 2011), *rev'd sub nom. Daimler AG v. Bauman*, 571 U.S. ___, ___, 134 S. Ct. 746, 762-63 (2014). As formulated by the majority, this test would allow Nevada courts to impute contacts from a subsidiary to a parent corporation for purposes of specific jurisdiction wherever "the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business." Majority opinion at 13 (quoting *F. Hoffman-La Roche, Ltd. v. Superior Court*, 30 Cal. Rptr. 3d 407, 419 (Ct. App. 2005)). The majority then holds that this court lacks specific jurisdiction over Viega GmbH and Viega International even after applying this test. Thus its suggestion that this court might, given hypothetical facts other than those before it, impute contacts from a subsidiary to a parent corporation for specific jurisdiction purposes via this "agency" theory is dicta.

The HOA argued almost exclusively for *general* jurisdiction under *Bauman I*'s "agency" theory. And as the majority admits, following the Supreme Court decision in *Bauman II*, 571 U.S. at ___, 134 S. Ct. at 746, which reversed *Bauman I*, that argument is now defunct. "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Bauman II*, 571 U.S. at ___, 134 S. Ct. at 760 (internal quotations omitted). Viega GmbH, Viega International, and Vanguard are neither incorporated in Nevada nor have their principal places of business here. There may be other bases for general jurisdiction beyond these paradigm examples, but even if Vanguard's contacts are imputed to Viega GmbH and Viega International, no such base is present here. If Vanguard's conduct in Nevada and its relationship with Viega GmbH and Viega International sufficed to

establish general jurisdiction over the German companies, "the same global reach would presumably be available in every other State in which [the subsidiary's] sales are sizable. Such exorbitant exercises of all-purpose jurisdiction would scarcely permit out-of-state defendants 'to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit,'" as due process requires. *Id.* at 761-62 (quoting *Burger King Corp.*, 471 U.S. at 472).

With agency-based *general* jurisdiction eliminated by *Bauman II*, this court should have allowed the parties to submit supplemental briefs on *specific* jurisdiction post-*Bauman II*.[1] But we denied the request for further supplemental briefing, and so are left with the general jurisdiction "agency" test stated in *Bauman I*,[2] awkwardly recast without meaningful revision as a basis for *specific* jurisdiction.

A subsidiary corporation is one that is subordinate to and under a parent's control. *Black's Law Dictionary* 1565 (9th ed. 2009). So,

---

[1]The parties' pre-*Bauman* insistence on an expansive agency theory of general jurisdiction also lost force when one of the two consolidated petitions seeking to establish personal jurisdiction over the Viega defendants settled. The claims in the settled case arose out of work by Vanguard that continued post-acquisition, unlike the claims in this matter.

[2]Because the terms "agency" and "agent" are terms of art with legal definitions that the majority's test does not reflect, *see Grand Hotel Gift Shop v. Granite State Ins. Co.*, 108 Nev. 811, 815, 839 P.2d 599, 602 (1992) (defining an agency relationship as "when one who hires another retains a contractual right to control the other's manner of performance"), this concurrence uses quotation marks where it uses the terms to denote a relationship that satisfies the majority's test.

SUPREME COURT
OF
NEVADA

(O) 1947A

4

presumably, a subsidiary's function will always be "compatible" with the business of its parent company, and its purpose will always be to "assist[ ] the parent in the pursuit of[ ] the parent's own business." Thus, the majority's specific jurisdiction "agency" test—whether "the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's own business"—"stacks the deck, for it will [almost] always yield a pro-jurisdiction answer." *Bauman II*, 571 U.S. at ___, 134 S. Ct. at 759. Beyond this, the "agency" test the majority proposes is not a specific jurisdiction test at all, for it dispenses with the connection between the liability-producing act, the defendant, and the forum state that define *specific* jurisdiction.

The same rules that govern corporate liability also "form the foundation for determining when one juridical person's contacts will be attributed to another." Brief for the United States as Amicus Curiae Supporting Petitioner at 25, *Bauman II*, 571 U.S. ___, 134 S. Ct. 746 (2014) (No. 11-965). This legal foundation establishes that a principal may be liable for the actions of its agent where it directed (or impliedly authorized) its subsidiary to take the actions in question. *See House of Koscot Dev. Corp. v. Am. Line Cosmetics, Inc.*, 468 F.2d 64, 67 (5th Cir. 1972); *Lear v. Bishop*, 86 Nev. 709, 712-13, 713 n.1, 476 P.2d 18, 21 & n.1 (1970). Thus, in the specific jurisdiction context, "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there" where that action produces the claim asserted against the parent in the forum. *See Bauman II*, 571 U.S. at ___ n.13, 134 S. Ct. at 759 n.13.

But neither Viega GmbH nor Viega International could possibly have directed Vanguard to take the liability-producing action—

Vanguard's installation of the allegedly defective pipes—*because the German companies did not acquire Vanguard until after that installation was complete.* So, even recognizing that the acts of an agent can subject the principal to specific jurisdiction when the defendant directs the agent to engage in liability-producing activity in the forum, this case does not present that issue; the liability-producing acts here were *faits accomplis before* the Viega defendants acquired Vanguard.

The majority avoids this issue and the simple conclusion to which it leads; to wit, that the current existence of an "agency" relationship between a parent and subsidiary has no relevance where, as here, specific jurisdiction is claimed over the parent company and the "agency" relationship was established after the subsidiary had already completed the liability-producing work at issue. Instead the majority blurs the line between general and specific jurisdiction by focusing on Vanguard's contacts with this State generally and whether an "agency" relationship *currently* exists between it and the German entities. By doing so, the majority suggests that actions that a subsidiary takes prior to a parent company's acquisition of it are imputable to that parent company for specific jurisdiction purposes, so long as the subsidiary is the parent's "agent" at the time litigation is brought.

This result defies the "basic agency law" that the majority invokes, and to stark effect. For an exercise of specific jurisdiction to comport with due process, the suit must arise "out of contacts that the 'defendant *himself*' creates with the forum State." *Walden v. Fiore*, 571 U.S. ___, ___, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475). This requirement is satisfied where a principal directs an agent to take tortious action in a forum because that principal has itself

SUPREME COURT
OF
NEVADA

(O) 1947A

created the relevant contacts with that forum. *See Bauman II*, 571 U.S. at ___ n.13, 134 S. Ct. at 759 n.13. But the majority's position suggests that specific jurisdiction over the defendant corporations in this case might have been proper even though such jurisdiction would have been based upon the wholly unilateral actions taken by Vanguard before it was acquired by the German Viegas. Were this court to exercise personal jurisdiction using such a theory in the future, it would certainly violate due process. *See Helicopteros Nacionales*, 466 U.S. at 417 (stating that "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); *see also Walden*, 571 U.S. at ___, 134 S. Ct. at 1122 (noting that the Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State").

Moreover, inasmuch as the majority's position holds that a principal's current right to control an "agent," without more, opens the jurisdictional door for any tortious acts in which that "agent" may previously have engaged, it may chill investment in Nevada. If a parent company may face liability and be haled into court based on actions that its subsidiary-agent took at any time prior to their relationship forming, what right-minded entity would invest in a subsidiary here? And the impact on foreign-national investment has the potential to be more pronounced. Article 18 of the Preliminary Draft Convention on Jurisdiction and Foreign Judgments in Civil and Commercial Matters adopted in 1999 by a Special Commission of the Hague Conference on Private International Law provides that:

SUPREME COURT
OF
NEVADA

(O) 1947A

7

> 2. [J]urisdiction shall not be exercised by the courts of a Contracting State on the basis solely of one or more of the following[:]
>
> e) the carrying on of commercial or other activities by the defendant in that State, except where the dispute is directly related to those activities.

But the majority's approach allows an exercise of jurisdiction over a defendant based solely on its commercial activity, namely its establishment of an "agency" relationship, with a company subject to specific jurisdiction in this state, whether or not that commercial activity relates to the dispute in question. Thus, separate and apart from contradicting well-established domestic law, the majority's apparent approach to jurisdiction is also the type of "[o]verly aggressive jurisdictional assertion[ ] that [is] incompatible with prevailing notions in other nations." Friedrich K. Juenger, *The American Law of General Jurisdiction,* 2001 U. Chi. Legal F. 141, 166 (2001).

In sum, I join in the outcome only—neither general nor specific jurisdiction may lie over Viega GmbH and Viega International. To the extent the majority has said more, it has said too much.

_____ Pickering _____, J.
Pickering

I concur:

_____ Gibbons _____, C.J.
Gibbons

